## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**BANKPLUS**                                                    **APPELLANT**

**VS.**                                    **CIVIL ACTION NO. 3:08-cv-00498-DPJ-JCS**

**KINWOOD CAPITAL GROUP, L.L.C.**
**AND GEORGE KINIYALOCTS, INDIVIDUALLY**
**AND AS GENERAL PARTNER OF KINIYALOCTS**
**FAMILY PTRS. I, LTD.**                                        **APPELLEES**

---

### ON APPEAL FROM
### THE UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**IN RE:**

**NORTHLAKE DEVELOPMENT, L.L.C.**               **CASE NO. 06-01934-NPO**
**DEBTOR**                                       **CHAPTER 11**

****************

**KINWOOD CAPITAL GROUP, L.L.C.**
**AND GEORGE KINIYALOCTS, INDIVIDUALLY**
**AND AS GENERAL PARTNER OF KINIYALOCTS**
**FAMILY PTRS. I, LTD.**                                        **PLAINTIFFS**

**VS.**                                       **ADV. PRO. NO. 06-00171-NPO**

**NORTHLAKE DEVELOPMENT, L.L.C.**
**AND BANKPLUS**                                               **DEFENDANTS**

---

### APPELLANT BRIEF
### OF BANKPLUS

---

# **TABLE OF CONTENTS**

PAGE

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT .................................... 1

STATEMENT OF BASIS OF APPELLATE JURISDICTION ..................... 1

STATEMENT OF ISSUES PRESENTED .................................................. 1

STATEMENT OF STANDARD OF APPELLATE REVIEW ........................ 2

STATEMENT OF THE CASE .................................................................. 2

STATEMENT OF RELEVANT FACTS ..................................................... 12

SUMMARY OF THE ARGUMENT ......................................................... 19

ARGUMENT .......................................................................................... 20

    I.    The Bankruptcy Court Should Have Found Bankplus to be a Bonafide
Purchaser of the Property for Value and Without Notice ...................... 21

        A.    Bankplus paid valuable consideration in connection with the
Transactions ............................................................................. 21

        B.    Bankplus paid the valuable consideration in good faith. ........... 21

        C.    Bankplus was without notice of the adverse rights
of Kinwood in the Property ........................................................ 23

               1.    Bankplus was without actual notice of Kinwood's adverse
rights. .............................................................................. 24

                    a.    Earwood's knowledge cannot be imputed to Bankplus..... 24

                        (i)    Earwood's knowledge cannot be imputed
to BankPlus because Plantiffs failed to prove
that the Earwood & Childers Firm was the
agent of BankPlus. ................................................. 25

(ii)    Earwood's knowledge cannot be imputed to BankPlus because the Earwood & Childers Firm was nothing more than an independent contractor for BankPlus............................................................25

(iii)    Earwood's knowledge cannot be imputed to BankPlus because of the Adverse Interest Exception ................................................................26

2.    Bankplus was unquestionably without constructive or inquiry notice of Kinwood's adverse rights ................................................29

II.    The Bankruptcy Court Erred When it Adjudicated that the Kinwood Warranty Deeds Were Null and Void Ab Initio and that, as a result, the Bankplus Deeds of Trust Did Not Create a Valid Security Interest in the Property..........................32

A.    The Bankruptcy Court's reliance on a New York case of first impression was misplaced................................................................32

B.    The cases cited below by Plantiffs are completely distinguishable and/or are contrary to the law in Mississippi...........................................33

C.    The more persuasive, and analogous, authorities demonstrate that the Kinwood Warranty Deeds were voidable rather than void, and, as such that the BankPlus Deeds of Trust created a valid security interest in the Property due to BankPlus' bonafide purchaser status..............................35

D.    Sound public policy favors a finding by this Court that the BankPlus Deeds of Trust are valid and enforceable. ....................................................38

III.    The Bankruptcy Court Erred when it Failed to Impose an Equitable Lien on the Property in Favor of Bankplus for the Indebtedness Owed By Northlake to Bankplus Under the Promissory Notes and Bankplus Deeds of Trust. .................40

CONCLUSION................................................................................................43

## TABLE OF AUTHORITIES

PAGE

Cases

*Associates Fin'l Servs. Co. v. Bennett,*
611 So. 2d 973, 975-977 (Miss. 1992) ............................................................42

*Atkinson v. Greaves,*
11 So. 688, 688 (1892)............................................................21, 23

*Bedford v. Kravis,*
622 So.2d 291, 295 (Miss. 1993)............................................................24

*Blue River Co. v. Summit County Dev. Corp.,*
207 F. Supp. 283, 290 (D. Colo. 1062)............................................................37

*Bogue Elec. Manufacturing Co. v. Coconut Grove Bank,*
269 F.2d 1, 4 (5th Cir. 1959) ............................................................25

*Boston & M. Consol. C. & S. Mining co. v. Montana Ore Purchasing Co.,*
89 F. 529, 530 (D. Mont. 1898) ............................................................37

*Cumberland Capital Corp., Inc. v. Robinette,*
331 So.2d 709 (Ala. Ct. Civ. App. 1976) ............................................................33, 34, 36

*First Properties, LLC v. JPMorgan Chase Bank, NA,*
2008 WL 110477 (Ala. January 11, 2008) ............................................................25

*Garris v. Smith's G & G, LLC,*
941 So. 2d 228 (Miss. App. 2006) ............................................................36, 38

*Guice v. Burrage,*
156 F.2d 304 (5th Cir. (Miss.) 1946), ............................................................35, 36

*Hall v. Farmers' & Merchants' Bank,*
46 S.W. 1000, 1002 (Mo. 1898) ............................................................37

*Harrell v. Lamar Co., LLC,*
925 So. 2d 870, 876 (Miss. App. Ct. 2005) ............................................................24, 30

*Harrison v. City of New Bern,*
137 S.E. 582, 584 (N.C. 1927)............................................................37

*Horvath v. Nat'l Mortgage Co.*,
    213 N.W. 202 (Mich. 1927) ................................................................34, 36

*In re Mintz*,
    434 F. 3d 222 (3rd Cir. (Pa.) 2006) ................................................................43

*Jordan v. McNeil*,
    1881 WL 863 (Kan. 1881) ................................................................35

*Kane Enterprises v. MacGregor*,
    322 F. 3d 371, 375 (5th Cir. 1993) ................................................................41

*Keville v. McKever*,
    675 N.E. 2d 417, 431-32 & n. 26 (Mass. App. 1997) ................................43

*Lee v. Boyd*,
    *16 So.2d 30 (Miss. 1943)* ................................................................36, 38

*Levy v. McGill*,
    2006 WL 2844566 *2 (S.D. Miss. 2006) ................................................41

*Martin Marietta Corp. v. Gould, Inc.*,
    70 F.3d 768, 773 (4th Cir. 1995) ................................................................26

*Martin v. Xarin Real Estate, Inc.*,
    703 F.2d 883 (5th Cir. (Tex) 1983) ................................................................28

*McFarland v. Entergy Miss., Inc.*,
    919 So.2d 894, 902 (Miss. 2005) ................................................................25

*Mills v. Damson Oil Corp.*,
    686 F.2d 1096, 1101 (5th Cir. 1982) ................................................26, 29

*Ohio Miller's Mut. Ins. Co. v. Artesia State Bank*,
    *39* F.2d 400 (5th Cir. (Miss) 1930) ................................................................28

*Overhoff v. Scarp, Inc.*,
    812 N.Y.S.2d 809, 819 (N.Y. Sup. 2005) ................................6, 32, 33

*Parker v. King*,
    108 So. 2d 224 (Miss. 1959) ................................................................35

*Plunk v. Yaquinto (In re Plunk)*,
    481 F.3d 302, 305 (5th Cir. 2007) ................................................................2, 32

*Sanders v. Sorrell,*
    3 So. 661 (Miss. 1888) ...............................................................................35

*Scott County Milling Co. v. Powers,*
    73 So. 792 (Miss. 1916) ..............................................................................28

*Securities Inv. Co. v. Cohen,*
    131 So.2d 439, 443-44 (Miss. 1961).............................................................40

*Simmons v. Mississippi Transp. Comm'n,*
    717 So. 2d 300, 303 (Miss. 1998).................................................................21

*Svanidze v. Kirkendall,*
    169 P. 3d 262 (Colo. Ct. App. 2007)............................................................36

*Travis v. Dantzler,*
    141 So.2d 556 (Miss. 1962 .........................................................................35

*Union Cent. Life Ins. Co. v. Robinson,*
    148 F. 358 (5th Cir. 1906) ..........................................................................27

*United States v. Francis,*
    *623 F. Supp.* 535, 536-38 (D.C. V.I. 1985) ...................................................43

*U.S. for use of Wallace v. Flintco, Inc.,*
    143 F.3d 955, 971 (5th Cir. 1998) ...............................................................43

*Wells Fargo v. Billingsly,*
    Civil Action No. S85-0594(NG).....................................................................38

## STATUTES AND OTHER AUTHORITIES

26A C.J.S. Deeds § 148 ........................................................................................32

11 U.S.C. § 105 ..............................................................................................10, 11

28 U.S.C. § 157 ....................................................................................................1

28 U.S.C. § 158 ....................................................................................................1

28 U.S.C. § 158(a)...............................................................................................1

Bankruptcy Rule 8002(b) ...................................................................................10

Bankruptcy Rule 8002(b)(4) ............................................................................9, 11

Bankruptcy Rule 8012 ...................................................................................................1

Bankruptcy Rule 8013 ...................................................................................................2

Federal Rule 59(e)....................................................................................................10, 11

Federal Rule 60(a)....................................................................................................10, 11

Federal Rule 60(b) .......................................................................................................11

Miss. Code Ann. § 79-29-308 ........................................................................................40

1 *The Law of Debtors and Creditors* § 9:13 (June 2008) ..................................................41

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Bankruptcy Rule 8012, BankPlus respectfully submits that oral argument would significantly aid the decisional process in connection with the instant appeal because of the relative complexity of the facts and legal arguments at issue herein.

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This Court's appellate jurisdiction over this matter is based on 28 U.S.C. § 158(a), which states in pertinent part: "The district courts of the United States shall have jurisdiction to hear appeals from (1) final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157]." 28 U.S.C. § 158.

## STATEMENT OF THE ISSUES PRESENTED

The issues presented for review in the instant appeal are as follows:  (1) whether the Bankruptcy Court erred when it adjudicated that certain Warranty Deeds, which conveyed certain real property from Kinwood Capital Group, LLC to Northlake Development, LLC, were null and void *ab initio* and did not convey title to Northlake Development, LLC; (2) whether the Bankruptcy Court erred when it adjudicated that certain Deeds of Trust, granted in connection with certain real property by Northlake Development, LLC and in favor of BankPlus, were null and void *ab initio* and did not create a valid and enforceable security interest in the subject real property in favor of BankPlus; (3) whether the Bankruptcy Court erred when it failed to adjudicate that BankPlus, as the holder of the aforementioned Deeds of Trust, was a bonafide purchaser of the subject real property for value without notice and that, accordingly, those Deeds of Trust did in fact create a valid and enforceable security interest in the subject real property in favor of BankPlus; (4) whether the Bankruptcy Court erred when it failed to impose an equitable lien on the subject real property in favor of BankPlus for all amounts owed by Northlake Development, LLC to BankPlus under certain Promissory Notes at issue which were executed by Northlake Development, LLC in favor of BankPlus and secured by the aforementioned Deeds of

Trust; and (5) whether the Bankruptcy Court erred when it found that it had jurisdiction to consider and grant Appellees' Motion for Supplemental Judgment or Correction of Judgment.[1]

**STATEMENT OF THE STANDARD OF APPELLATE REVIEW**

This Court must review the Bankruptcy Court's findings of fact for clear error and must consider the Bankruptcy Court's conclusions of law *de novo*. *Plunk v. Yaquinto (In re Plunk)*, 481 F.3d 302, 305 (5th Cir. 2007); *see also* Bankruptcy Rule 8013.

**STATEMENT OF THE CASE**

On September 14, 2006, Northlake Development, LLC ("Northlake") filed a voluntary petition (the "Petition") pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi, Jackson Division (the "Bankruptcy Court"), which was assigned Case No. 06-01934 (the "Bankruptcy Case"). (Dkt. No. 94[2], p. 3). Northlake is a Mississippi manager managed limited liability company formed on June 27, 2000, whose sole owner, managing member, and registered agent for service of process is Michael E. Earwood ("Earwood"), an attorney initially with the law firm of Fox, Earwood & Childers and, later, with the law firm of Earwood & Childers, PLLC[3] (Dkt. No. 94, pp. 5, 8). Earwood signed the Petition as managing member of Northlake, and Robert B. Childers ("Childers"), who practiced law with Earwood at the Earwood & Childers Firm, signed the Petition as Northlake's attorney. (Dkt. No. 94, p. 3). On October 23, 2006, the Bankruptcy Case was converted to a Chapter 7 case and the United States Trustee subsequently appointed a Chapter 7 Trustee (the "Trustee"). (Dkt. No. 94, p. 4).

On October 11, 2006, Kinwood Capital Group, LLC ("Kinwood") and George Kiniyalocts ("George Kiniyalocts") initiated Adversary Proceeding No. 06-00171 (the "Adversary Proceeding") by filing a Complaint against Northlake and BankPlus. (*See* Dkt. No. 1; Dkt. No. 94, p. 5; Dkt. No. 79, p. 5). Kinwood is a member-managed Mississippi limited liability company formed on March 20, 1998,

---

[1] But see *infra*, pp. 11-12, with respect to this last issue presented for review.
[2] The docket references contained herein refer to the docket in Adversary Proceeding No. 06-00171, discussed below, unless otherwise stated.
[3] Both law firms are referred to collectively herein as the "Earwood & Childers Firm" unless otherwise stated.

whose initial members were George Kiniyalocts (who initially owned 80% of Kinwood) and Earwood (who initially owned 20% of Kinwood). (Dkt. No. 94, p. 4-5; Dkt. No. 79, p. 6).

However, on or before April 8, 1998, subsequent to Kinwood's formation but prior to the initiation of the Adversary Proceeding, George Kiniyalocts conveyed his Kinwood ownership interest to Kiniyalocts Family Partners I, LTD, a family limited partnership whose general partner is George Kiniyalocts[4], and an additional 5% ownership interest in Kinwood was conveyed to Earwood. (Dkt. No. 94, p. 4; Dkt. No. 79, p. 6; Tr. Ex. P-7[5]; Trial Tr. Vol. 1, pp. 45, 188-189[6]). Accordingly, on December 14, 2006, an Amended Complaint (the "Amended Complaint") was filed for the purpose of naming Kinwood and Kiniyalocts as the proper Plaintiffs in the Adversary Proceeding (Kinwood and Kiniyalocts are hereinafter sometimes referred to collectively as "Plaintiffs"). (*See* Dkt. Nos. 1 and 25; *see also* Dkt. No. 94, p. 5).

In the Amended Complaint, Plaintiffs asserted that Kinwood was the rightful owner of certain real property identified in Exhibit A thereto (the "Property"). (*See* Dkt. No. 25; *see also* Dkt. No. 94, p. 5). Northlake had claimed ownership of the Property during the course of the Bankruptcy Case as a result of a Warranty Deed from Kinwood to Northlake executed on July 12, 2000 and recorded on August 7, 2000 in Deed Book B-21 at Page 717 of the land records of the First Judicial District of Panola County, Mississippi (hereinafter, the "Land Records"), as corrected and amended by a Correction and Amendment to Warranty Deed executed on August 5, 2004 and recorded on August 9, 2004 in Deed Book B-31 at Page 611 of the Land Records (hereinafter sometimes referred to collectively as the "Kinwood Warranty Deeds") (the conveyance evidenced by the Kinwood Warranty

---

[4] Hereinafter, George Kiniyalocts and Kiniyalocts Family Limited Partners I, LTD are referred to collectively as "Kiniyalocts" unless otherwise stated.

[5] This is a reference to Plaintiffs Trial Exhibit 7.

[6] The trial in the Bankruptcy Case, discussed below, lasted three days. Accordingly, the Trial Transcripts will be identified herein as follows: Vol. 1 is the transcript from October 31, 2007; Vol. 2a is the transcript from the morning of November 1, 2007; Vol. 2b is the transcript from the afternoon of November 1, 2007; and Vol. 3 is the transcript from November 2, 2007.

Deeds is hereinafter sometimes referred to as the "Kinwood Conveyance"). (Dkt. No. 25, ¶¶ 5, 7; Dkt. No. 94, pp. 3, 8; Tr. Exs. BP-1 and BP-2[7]).

Further, BankPlus had claimed a properly perfected, first priority security interest in the Property as a result of various recorded Deeds of Trust and an Amendment to Deeds of Trust (hereinafter sometimes referred to collectively herein as the "BankPlus Deeds of Trust")[8] which Northlake executed in BankPlus' favor in order to secure repayment of certain indebtedness owed to BankPlus by Northlake and evidenced by certain promissory notes identified more specifically below. (See Dkt. No. 25, ¶ 6; Dkt. No. 94, pp. 8-9).

However, in the Amended Complaint, Plaintiffs asserted, inter alia, that the Kinwood Conveyance was void and did not convey title to the Property to Northlake because the conveyance was made without authority and was therefore fraudulent. Plaintiffs further asserted that, because the Kinwood Conveyance was void, the "deeds of trust" from Northlake to BankPlus were also void and did not convey a valid and enforceable security interest in the Property to BankPlus. Finally, Plaintiffs asserted, in connection with the "deeds of trust" from Northlake to BankPlus, that BankPlus was not a bonafide purchaser of the Property for value without notice because BankPlus had actual or constructive notice of the invalidity of Northlake's title to the Property. (Dkt. No. 25, pp. 3-5; Dkt. No. 79, p. 3).

Accordingly, in the Amended Complaint, Plaintiffs sought, inter alia, the issuance of a Judgment declaring the Kinwood Conveyance to Northlake void, requiring the Kinwood Warranty

---

[7] These are references to BankPlus Trial Exhibits 1 and 2.

[8] The BankPlus Deeds of Trust consist specifically of the following (Book and Page references hereinafter refer to recordings in the Land Records): (i) a Deed of Trust executed on August 15, 2000 and recorded on August 25, 2000 in Deed Book 276 at Page 61, (ii) a Deed of Trust executed on February 10, 2001 and recorded on March 28, 2001 in Deed Book 278 at Page 687, (iii) a Deed of Trust executed on November 27, 2001 and recorded on March 29, 2002 in Deed Book 285 at Page 137, (iv) a Deed of Trust executed on April 8, 2002 and recorded on September 19, 2002 in Deed Book 288 at Page 17, (v) a Deed of Trust executed on October 3, 2002 and recorded on October 21, 2002 in Deed Book 288 at Page 483, (vi) a Deed of Trust executed on September 4, 2003 and recorded on October 16, 2003 in Deed Book 294 at Page 673, (vii) an Amendment to Deeds of Trust executed on December 22, 2003 and recorded on December 30, 2003 in Deed Book 296 at Page 155, and (viii) a Deed of Trust executed on February 20, 2004 and recorded on March 8, 2004 in Deed Book 297 at Page 291. (See Tr. Exs. BP-7, 27, 132, 72, 88, 107, 3, and 136, respectively).

Deeds to be cancelled of record, and declaring the Deeds of Trust from Northlake to BankPlus to be null and void and requiring them to be cancelled of record. (*See* Dkt. No. 25, p. 7; Dkt. No. 79, pp. 3, 12).

On December 15, 2006, BankPlus filed its Answer (the "Answer") to the Amended Complaint. (Dkt. No. 27). In its Answer, BankPlus asserted multiple defenses to the allegations set forth in the Amended Complaint, including that BankPlus acted in good faith and without notice of any adverse rights to the Property. (Dkt. No. 27, p. 4; *see also* Dkt. No. 79, pp. 4-5, 9). On June 15, 2007, BankPlus filed its Expert Designation, designating E. Frank Fillingim, Jr. ("Fillingim") and John C. Underwood, Jr. ("Underwood") as its expert witnesses and attaching their respective expert reports (respectively, the "Fillingim Expert Report" and the "Underwood Expert Report"). (Dkt. No. 46).

On October 15, 2007, BankPlus filed its Memorandum Trial Brief (the "Trial Brief") with the Bankruptcy Court. In its Trial Brief, BankPlus argued, *inter alia*, that, as the holder of the BankPlus Deeds of Trust, it should be afforded the protection of a bonafide purchaser of the Property for value without notice. (Dkt. No. 74, pp. 8-10; *see also* Dkt. No. 79, pp. 4-5, 9).

On October 31, 2007, the Bankruptcy Court commenced a three day trial of the Amended Complaint (the "Trial"). At the Trial, BankPlus once again asserted its bonafide purchaser argument. (*See e.g.* Trial Tr. Vol. 1, pp. 20:6-9 and 32:18-20). And on December 13, 2007, the Bankruptcy Court entered its Memorandum Opinion and Order Granting Amended Complaint (the "Memorandum Opinion"). (*See* Dkt. No. 94).

In the Memorandum Opinion, the Bankruptcy Court first held that the "Kinwood Warranty Deed"[9] was void *ab initio* and did not convey title to the Property to Northlake. (*See* Dkt. No. 94, p. 10). The Bankruptcy Court's holding in this regard was essentially based on two findings, along with a single decision from a New York state appellate court.

---

[9] The Memorandum Opinion expressly defined the term "Kinwood Warranty Deed" to solely mean the July 12, 2000 Warranty Deed recorded on August 7, 2000 in Deed Book 21 at Page 717, and did not include in that definition the Correction and Amendment to Warranty Deed executed on August 5, 2004 and recorded on August 9, 2004 in Deed Book B-31 at Page 611. (Dkt. No. 94, p. 8).

First, the Bankruptcy Court found that Earwood lacked actual, or express, authority to execute the "Kinwood Warranty Deed" on behalf of Kinwood because, under the terms of Article 4.1 of Kinwood's Operating Agreement (the "Kinwood Operating Agreement"), which was *not* recorded in the Land Records or anywhere else, the execution of such a warranty deed required Kiniyalocts' express approval as the majority interest holder in Kinwood and Kiniyalocts had not given that approval to Earwood.  Second, the Bankruptcy Court found that Earwood lacked apparent authority to execute the "Kinwood Warranty Deed" on behalf of Kinwood because Earwood, as 100% owner of Northlake, knew that Earwood, as minority owner of Kinwood, had no authority to act for Kinwood without Kiniyaloct's express approval. (Dkt. No. 94, pp. 5 and 10-20).[10]  Based on the foregoing two findings and the aforementioned New York decision, the Bankruptcy Court summarized its holding in this regard as follows:

> Actions taken by an LLC member [such as Earwood] in contravention of the LLC Operating Agreement [i.e., the unrecorded Kinwood Operating Agreement] are null, void and of no effect.  *See Overhoff v. Scarp, Inc.*, 12 Misc. 3d 350, 362 [812 N.Y.S.2d 809, 819] (N.Y. Sup. 2005).  In that Earwood lacked either express authority or apparent authority to convey the Property from Kinwood to Northlake, the Kinwood Warranty Deed was void *ab initio* and conveyed nothing.

(Dkt. No. 94, p. 18).

In the Memorandum Opinion, the Bankruptcy Court next held that the "BankPlus Deed of Trust"[11] did not create a valid security interest in the Property.  In so holding, the Bankruptcy Court stated simply:

> [For the reasons quoted in the immediately preceding paragraph hereof] [t]he Kinwood Warranty Deed conveyed no interest in the Property to Northlake, and consequently, Northlake had no interest in the Property to convey to BankPlus.  Thus, the BankPlus

---

[10] On a related note, the Bankruptcy Court found that Earwood's attempted conveyance of the Property from Kinwood to Northlake was "part of a fraudulent scheme [by Earwood] to convert Kinwood assets," including the Property itself, which may have been discovered earlier "[h]ad an independent . . . title abstractor become involved at any point." (Dkt. No. 94, pp. 18-20 and n. 14).  BankPlus submits that this latter point is not relevant.  That said, however, and as discussed below, an independent title abstractor actually did become involved several years before the Bankruptcy Case's initiation. (*See infra*, p. 18 and footnote 20).

[11] The Memorandum Opinion appeared to expressly define the term "BankPlus Deed of Trust" to solely include the initial Deed of Trust executed on August 15, 2000 and recorded on August 25, 2000 in Deed Book 276 at Page 61, and not to include the subsequently recorded Deeds of Trust and Amendment to Deeds of Trust set forth in footnote 8, *supra*. (Dkt. No. 94, p. 8; Tr. Ex. P-31).

Deed of Trust, executed by Earwood on behalf of Northlake, did not create a valid security interest in the Property in favor of BankPlus.

(Dkt. No. 94, pp. 18).

Based on the foregoing two holdings, and *without even addressing* BankPlus' argument that, as the holder of the BankPlus Deeds of Trust, it should be afforded the protection of a bonafide purchaser of the Property for value without notice, the Bankruptcy Court ultimately held in its Memorandum Opinion that the Amended Complaint should be granted as follows:

A.     The [Plaintiffs'] request for issuance of a judgment declaring the <u>Kinwood Warranty Deed</u> null and void and requiring <u>it</u> to be cancelled of record . . . shall be and hereby is granted;

B.     The [Plaintiffs'] request for the issuance of a judgment declaring the <u>BankPlus Deed of Trust</u> null and void and requiring <u>it</u> to be cancelled of record . . . shall be and hereby is granted; and

C.     [I]f the Plaintiffs are seeking additional relief . . ., an application for such relief should be made within ten (10)days of the date of this Memorandum Opinion . . .

(Dkt. No. 94, p. 20) (emphasis added[12]).

Also on December 13, 2007, the Bankruptcy Court entered a separate Final Judgment Granting Amended Complaint (the "Final Judgment"), Paragraphs A through C of which were consistent with the above Paragraphs A through C of the Memorandum Opinion (Dkt. No. 95).[13]   And on December 19, 2007, BankPlus timely filed a Notice of Appeal from the Final Judgment (the "December 19, 2007 Notice of Appeal"). (Dkt. No. 98).

On December 24, 2007, the Plaintiffs timely filed a Motion to Alter or Amend Judgment (the "Motion to Alter or Amend") and, on January 22, 2008, filed an Amendment to Motion to Alter or Amend Judgment (the "Amended Motion to Alter or Amend"). (Dkt. Nos. 101 and 110).  In the Motion to Alter or Amend, the Plaintiffs requested the Bankruptcy Court to, *inter alia*, amend Paragraphs A and B of the Final Judgment by substituting the following language in their stead:

---

[12] The emphasized terms support what is discussed in footnotes 9 and 11, *supra*.

[13] While not particularly relevant herein, it should be noted that the Bankruptcy Court found the Final Judgment to be applicable to both Northlake and BankPlus because Northlake did not file an Answer to the Amended Complaint and because the Trustee did not participate at Trial. (Dkt. No. 94, p. 1 at n. 1).

A.  The [Plaintiffs'] request for issuance of a judgment declaring the Kinwood
    Warranty Deed (covering the property described in Exhibit A) null and void *ab
    initio* and requiring it to be cancelled of record . . .hereby is granted;

B.  The [Plaintiffs'] request for the issuance of a judgment declaring the BankPlus
    Deeds of Trust null and void *ab initio* and requiring them to be cancelled of
    record . . . hereby is granted;

(Dkt. No. 101, pp. 1-2) (emphasis added to indicate the differences between the original Paragraphs A

and B and the proposed amended Paragraphs A and B).  The "Exhibit A" referenced in the proposed

amended Paragraph A was a legal description of property purportedly covered by the Kinwood

Warranty Deeds and the various BankPlus Deeds of Trust.  (*See* Dkt. No. 101, pp. 2-3).  However, in the

Amendment to Motion to Alter or Amend, the Plaintiffs requested the Bankruptcy Court to use the legal

description, set forth therein, as that "Exhibit A".  (Dkt. No. 110, pp. 1-2).

In the Motion to Alter or Amend, the Plaintiffs also requested the Bankruptcy Court to amend

the Final Judgment to add the following proposed Paragraph C:

C.  The Chancery Clerk . . . is directed to file this Judgment in the Land Records . . .
    with regard to the property described in Exhibit A, and the Chancery Clerk is
    further directed as follows:

    1.  Make an appropriate marginal notation on the warranty deeds from
        Kinwood . . . to Northlake . . . covering the property described in Exhibit
        A that such deeds have been rendered null and void *ab initio* by this
        Judgment and are hereby cancelled of record, said deeds being recorded
        in Deed Book B-21 at Page 717 and Deed Book B-31 at Page 611[14];

    2.  Make an appropriate marginal notation on all of the deeds of trust from
        Northlake . . . to BankPlus covering the property described in Exhibit A
        that such deeds of trust have been rendered null and void *ab initio* by this
        Judgment and are hereby cancelled of record, said deeds of trust being
        recorded in Deed of Trust Books and Pages 276 at 61; 278 at 687; 285 at
        137; 288 at 17; 288 at 483; 294 at 673 and 297 at 291[15].

(Dkt. No. 101, p. 2).

On February 4, 2008, BankPlus filed its Response to the Motion to Alter or Amend and the

Amendment to Motion to Alter or Amend.  (Dkt. No. 111).  Concerning the proposed amended

---

[14] These are the proper book and page numbers of the Kinwood Warranty Deeds (as that term is defined above in this
Brief).

[15] These are the proper book and page numbers of all of the BankPlus Deeds of Trust (as that term is defined above in
this Brief), with the exception of the December 22, 2003 Amendment to Deeds of Trust.

Paragraphs A and B, the proposed additional Paragraph C, and the related proposed Exhibit A contained in the *timely* filed Motion to Alter or Amend, BankPlus did not object to amendments to the Final Judgment for the purpose of correcting the legal description of the Property. (Dkt. No. 111, p. 3).

After holding a hearing on February 14, 2008, the Bankruptcy Court, on March 20, 2008, entered its Memorandum Opinion and Order Granting in Part and Denying in Part Motion to Alter or Amend Judgment and its related Final Judgment Granting in Part and Denying in Part Motion to Alter or Amend Judgment. (Dkt. Nos. 115 and 116). In this Final Judgment, the Bankruptcy Court, *inter alia*, granted the Plaintiffs' request to amend Paragraphs A and B of the Final Judgment as set forth above and Plaintiffs' request to use the aforementioned Exhibit "A" as the legal description referenced in amended Paragraph A. However, the Bankruptcy Court denied Plaintiffs' request to add the proposed Paragraph C, reasoning that it lacked jurisdiction to issue such a mandatory injunction to the Panola County, Mississippi Chancery Clerk. (*See* Dkt. No. 115, p. 6).

Also on March 20, 2008, the Bankruptcy Court entered an Amended Final Judgment Granting Amended Complaint (the "Amended Final Judgment"). (Dkt. No. 117). The Amended Final Judgment superseded the initial Final Judgment and read in pertinent part as follows:

A.   The [Plaintiffs'] request for issuance of a judgment declaring the Kinwood Warranty Deed (covering the property described in Exhibit A) null and void *ab initio* and requiring it to be cancelled of record . . . hereby is granted;

B.   The [Plaintiffs'] request for the issuance of a judgment declaring the BankPlus Deeds of Trust null and void *ab initio* and requiring them to be cancelled of record . . . hereby is granted;

(Dkt. No. 117).

On March 28, 2008, BankPlus timely filed a Notice of Appeal from the Amended Final Judgment (the "March 28, 2008 Notice of Appeal"). (Dkt. No. 121). This Notice of Appeal amended or superseded the December 19, 2007 Notice of Appeal, just as the Amended Final Judgment superseded the initial Final Judgment. (*See* Bankruptcy Rule 8002(b)(4)).

On April 25, 2008, which was one hundred and thirty-four (134) days after entry of the Final Judgment and thirty-six (36) days after entry of the Amended Final Judgment, Plaintiffs filed a Motion

for Supplemental Judgment or Correction of Judgment (the "Motion for Supplemental Judgment") purportedly pursuant to 11 U.S.C. § 105 and Federal Rule 60(a) (as incorporated into the Bankruptcy Case by Bankruptcy Pro. 9024). (Dkt. No. 127, p. 1 and ¶ 8). The Plaintiffs asserted therein that the Panola County, Mississippi Chancery Clerk advised them, more than ten (10) days after entry of the Amended Final Judgment, that said Amended Final Judgment needed to specifically list the recorded instruments affected thereby. (Dkt. No. 127, p. 2).

Accordingly, the Plaintiffs requested the Bankruptcy Court to, once again, "supplement, amend, or correct" its judgment in the Adversary Proceeding by substituting the following language in place of Paragraphs A and B of the Amended Final Judgment:

A.   The [Plaintiffs'] request for issuance of a judgment declaring the Kinwood Warranty Deed (covering the property described in Exhibit A), <u>being the warranty deeds from Kinwood . . . to Northlake . . . recorded in Deed Book B-21 at Page 717 and Deed Book B-31 at Page 611</u>[16], null and void *ab initio* and requiring <u>them</u> to be cancelled of record . . . hereby is granted;

B.   The [Plaintiffs'] request for the issuance of a judgment declaring the BankPlus Deeds of Trust <u>Deeds from Northlake . . . to BankPlus covering the property described in Exhibit A and being recorded in Deed of Trust Books and Pages 276 at 61; 278 at 687; 285 at 137; 288 at 17; 288 at 483; 294 at 673 and 297 at 291</u>[17] null and void *ab initio* and requiring them to be cancelled of record . . . hereby is granted;

(Dkt. No. 127, p. 6) (emphasis added to indicate the differences between Paragraphs A and B of the Amended Final Judgment and the proposed amended Paragraphs A and B).

On May 22, 2008, BankPlus filed an Objection to the Motion for Supplemental Judgment in which it argued that the Bankruptcy Court lacked jurisdiction to consider the motion because: (i) the motion was not a timely filed postjudgment motion allowed by Bankruptcy Rule 8002(b), (ii) doing so would not constitute taking of an action in aid of the appeal, (iii) the purpose of the motion was not to correct clerical errors under Federal Rule 60(a) (rather, the motion was actually an untimely Federal Rule 59(e) motion because it called into question the correctness of the Amended Final Judgment and

---

[16] These are the proper book and page numbers of the Kinwood Warranty Deeds (as that term is defined above in this Brief).
[17] These are the proper book and page numbers of all of the BankPlus Deeds of Trust (as that term is defined above in this brief), with the exception of the December 22, 2003 Amendment to Deeds of Trust.

sought to correct manifest errors of fact contained therein)[18], and (iv) the motion was not a timely filed Federal Rule 60(b) motion (and even if it were, the Bankruptcy Court would only have jurisdiction to consider and *deny* the motion absent obtaining leave from this Court). (*See* Dkt. No. 131, pp. 9-19; *see also* Dkt. Nos. 132-134).

On July 11, 2008, the Bankruptcy Court entered its Memorandum Opinion and Order Granting Motion for Correction of Judgment and its Final Judgment Granting Motion for Correction of Judgment. (Dkt. Nos. 138 and 139). The Bankruptcy Court specifically found therein that it had jurisdiction to consider and grant the Motion for Supplemental Judgment pursuant to 11 U.S.C. § 105 and Federal Rule 60(a), and also because doing so would, in the Bankruptcy Court's view, constitute taking of an action in aid of the appeal. (Dkt. No. 138, pp. 8-12). The Bankruptcy Court also found that the Motion for Supplemental Judgment should not be deemed to be an untimely Federal Rule 59(e) motion. (Dkt. No. 138, pp. 12-17). Significantly, in doing so, the Bankruptcy Court set forth a summary of the holdings contained in its Memorandum Opinion Granting Amended Complaint. (Dkt. No. 138, p. 16).

Also on July 11, 2008, the Bankruptcy Court entered a Second Amended Final Judgment Granting Amended Complaint (the "Second Amended Final Judgment") which superseded the initial Final Judgment and the Amended Final Judgment. (*See* Dkt. No. 140). And on July 21, 2008, BankPlus timely filed an Amended Notice of Appeal from the Second Amended Final Judgment (the "July 21, 2008 Amended Notice of Appeal"). (Dkt. No. 144). This Notice of Appeal amended or superseded the December 19, 2007 Notice of Appeal and the March 28, 2008 Notice of Appeal. (*See* Bankruptcy Rule 8002(b)(4)).

Also on July 21, 2008, BankPlus filed a Notice of Appeal from the Final Judgment Granting Motion for Correction of Judgment. (Dkt. No. 145). While BankPlus does believe that the Bankruptcy

---

[18] BankPlus' argument in this regard was primarily based on the apparently erroneous manner in which the Bankruptcy Court defined "Kinwood Warranty Deed" and "BankPlus Deed of Trust" in its Memorandum Opinion, *see supra* at footnotes 9 and 11, and also on the fact that Plaintiffs could not, in BankPlus' opinion, demonstrate the prerequisite for relief under Federal Rule 60(a) -- i.e., that the Court intended the Amended Final Judgment to contain or recite the language proposed in the Motion for Supplemental Judgment but, due to a clerical mistake or oversight, failed to include that language.

Court committed reversible error in connection with this Final Judgment, BankPlus filed this Notice of Appeal, out of an abundance of caution, to avoid any potential waiver or estoppel argument related to the fact that, as discussed above, the Bankruptcy Court had set forth in this Final Judgment a summary of the holdings contained in its Memorandum Opinion Granting Amended Complaint. As such, BankPlus is amenable to the dismissal of this particular Notice of Appeal as long as BankPlus will not be deemed to have waived the right to pursue, or to be estopped from pursuing, its other appeal. Accordingly, BankPlus will not brief the fifth, related issue presented for review as set forth above.

## STATEMENT OF RELEVANT FACTS

On March 20, 1998, Kinwood, a member-managed Mississippi limited liability company, was formed for the purpose of purchasing and developing the Property for resale. Kinwood's initial members were George Kiniyalocts (who initially owned 80% of Kinwood) and Earwood (who initially owned 20% of Kinwood). (Dkt. No. 94, pp. 4-5, 12-13; Dkt. No. 79, p. 6).

Kinwood's Certificate of Formation (the "Kinwood Certificate of Formation") was filed with the Mississippi Secretary of State by Earwood on behalf of Kinwood. (Dkt. No. 94, p. 5; Tr. Ex. P-2). The Kinwood Certificate of Formation lists no restrictions in Paragraph 7 thereof, captioned "[o]ther matters the . . . members elect to include." (Dkt. No. 94, p. 5; Tr. Ex. P-2). Accordingly, the Kinwood Certificate of Formation could have, but did not, evidence any limitation on the authority of Kinwood's members to convey or encumber Kinwood property.

The Kinwood Operating Agreement was executed by both George Kiniyalocts and Earwood, as the members of Kinwood. (Dkt. No. 94, p. 13; Tr. Ex. P-4). Article 4.1 of the Kinwood Operating Agreement provides in part as follows:

> All management decisions shall be by a vote of the Members owning a majority of the Membership Interests. Notwithstanding any provision in this Agreement to the contrary, the affirmative vote of Members holding at least . . . 75% . . . of all Membership Interests shall be required to approve the . . . disposition of all, or substantially all, of the Company's assets (other than in the ordinary course of the Company's business) which is to occur as part of a single Transaction or plan.

12

Significantly, however, the Kinwood Operating Agreement *was not recorded in the Land Records* or in any other public records. (*See* Dkt. No. 94, p. 5; *see also* Dkt. No. 79, p. 6). And indeed, the Kinwood Operating Agreement, or an abstract thereof including a description of the Property, could have been recorded in the Land Records or filed with the Mississippi Secretary of State. (*See* Dkt. No. 46, Underwood Expert Report, pp. 9, 11; Trial Tr. Vol. 3, pp. 57:11-25, 58:1-25, 59:1-4 ).

On or before April 8, 1998, George Kiniyalocts conveyed his Kinwood ownership interest to Kiniyalocts Family Partners I, LTD, a family limited partnership whose general partner is George Kiniyalocts, and an additional 5% ownership interest in Kinwood was conveyed to Earwood. (Dkt. No. 94, p. 4; Dkt. No. 79, p. 6; Tr. Ex. P-7).

On June 27, 2000, Northlake, a Mississippi manager managed limited liability company, was formed. Northlake's sole owner, managing member, and registered agent for service of process is Earwood. (Dkt. No. 94, pp. 5, 8). Northlake's Certificate of Formation (the "Northlake Certificate of Formation") was filed with the Mississippi Secretary of State by Earwood on behalf of Northlake. (Tr. Ex. P-21). The Certificate of Formation lists no restrictions in Paragraph 7 thereof. (Tr. Ex. P-21). Northlake's Operating Agreement (the "Northlake Operating Agreement") was executed by Earwood, as the managing member of Northlake. (Tr. Ex. P-22).

On July 12, 2000, Earwood executed on behalf of Kinwood a Warranty Deed which, on its face, conveyed the Property from Kinwood to Northlake for consideration. This Warranty Deed, which was recorded on August 7, 2000 in Deed Book B-21 at Page 717, contains an acknowledgment in the form prescribed by Mississippi law and is duly notarized. (*See* Dkt. No. 94, p. 8; Tr. Ex. BP-1; Dkt. No. 46, Underwood Expert Report, pp. 7-8). Subsequently, on August 5, 2004, Earwood executed on behalf of Kinwood and Northlake a Correction and Amendment to Warranty Deed which was recorded on August 9, 2004 in Deed Book B-31 at Page 611 and which served to "correct and amend" the property description set forth in the July 12, 2000 Warranty Deed. (Dkt. No. 25, ¶ 7; Dkt. No. 94, p. 8; Tr. Exs. BP-1 and BP-2). As set forth above, the foregoing documents are sometimes referred to collectively

13

herein as the Kinwood Warranty Deeds, and the conveyance evidenced by the Kinwood Warranty Deeds is sometimes referred to herein as the Kinwood Conveyance.

On August 15, 2000, Earwood executed on behalf of Northlake a Commercial Variable Rate Promissory Note (the "August 15, 2000 Promissory Note") pursuant to which Northlake borrowed from BankPlus the principal amount of $300,937.00 in exchange for a deed of trust on the Property. (Tr. Ex. BP-6; Dkt. No. 94, p. 8). The Northlake Operating Agreement, a copy of which BankPlus obtained prior to this initial Loan, gave Earwood full authority to borrow money on behalf of Northlake and to pledge the assets of Northlake as collateral. (Dkt. No. 94, p. 9; Tr. Ex. P-22). Also on August 15, 2000, and in order to secure repayment of the indebtedness evidenced by the August 15, 2000 Promissory Note, Earwood executed on behalf of Northlake a Deed of Trust on the Property in favor of BankPlus which was recorded on August 25, 2000 in Deed Book 276 at Page 61. (Tr. Ex. BP-7; *see* Dkt. No. 94, pp. 8-9).

In connection with the August 15, 2000 Promissory Note, BankPlus obtained a title certificate (the "First Title Certificate") from the Earwood & Childers Firm which was executed by Childers -- a member of that firm -- on the firm's behalf. The First Title Certificate, dated August 10, 2000, certified that Northlake was the fee simple owner of the Property as of August 1, 2000 subject to certain limited exceptions which are not relevant to the issues presented for review, and also indicated that the Property was unencumbered by prior mortgages or liens.[19] (Tr. Ex. BP-11; Dkt. No. 94, p. 9; Dkt. No. 79, p. 7). While the Bankruptcy Court found that Earwood actually did the title search and some related work which led to the issuance of the First Title Certificate, none of that was known to BankPlus and no finding to the contrary was made. (*See* Dkt. No. 94, pp. 9, 19; Trial Tr. Vol. 2a, pp. 11:11-15, 18:24-25, and 19:1-22; Trial Tr. Vol. 3, p. 40:16-20).

---

[19] While this is also not relevant to the issues presented for review, Childers testified at Trial that the August 1, 2000 date was a typographical error. Indeed, that date should have been August 7, 2000 (i.e., the date the initial Kinwood Warranty Deed was recorded). (Trial Tr. Vol. 2a, pp. 15-16). That said, the initial Kinwood Warranty Deed was in fact executed on July 12, 2000, twenty (20) days before August 1st.

14

Shortly after the loan evidenced by the August 15, 2000 Promissory Note was consummated, BankPlus obtained an updated title certificate (the "Second Title Certificate") from the Earwood & Childers Firm which was also executed by Childers. The Second Title Certificate, dated August 31, 2000, verified that the August 15, 2000 Deed of Trust had been duly recorded, and certified that Northlake was the fee simple owner of the Property as of August 25, 2000 subject to the August 15, 2000 Deed of Trust and certain other, limited exceptions which are not relevant to the issues presented. (Tr. Ex. BP-13; Dkt. No. 94, p. 9).

On November 10, 2000, Earwood executed on behalf of Northlake an Extension and Amendment to Promissory Note, which amended the maturity date set forth in the August 15, 2000 Promissory Note. (Tr. Ex. BP-24).

On February 10, 2001, Earwood executed on behalf of Northlake a Commercial Fixed Rate Promissory Note (the "February 10, 2001 Promissory Note") pursuant to which the August 15, 2000 Promissory Note was renewed and extended and additional funds (now totaling the principal amount of $425,518.50) were borrowed from BankPlus by Northlake in exchange for another deed of trust on the Property. (Tr. Ex. BP-26; *see* Dkt. No. 94, pp. 8-9). Also on February 10, 2001, and in order to secure repayment of the indebtedness evidenced by the February 10, 2001 Promissory Note, Earwood executed on behalf of Northlake a Deed of Trust on the Property in favor of BankPlus which was recorded on March 28, 2001 in Deed Book 278 at Page 687. (Tr. Ex. BP-27; *see* Dkt. No. 94, pp. 8-9).

On or about March 30, 2001, and in connection with the February 10, 2001 Promissory Note, BankPlus obtained another title certificate (the "Third Title Certificate") from the Earwood & Childers Firm which was again executed by Childers. The Third Title Certificate verified that the February 10, 2001 Deed of Trust had been duly recorded (though it was incorrectly referred to as a February 10, 2000 Deed of Trust), and certified that Northlake was the fee simple owner of the Property as of March 28, 2001 subject to the August 15, 2000 Deed of Trust, the February 10, 2001 Deed of Trust, and certain other unrelevant exceptions. (Tr. Ex. BP-33).

On May 22, 2001, Earwood executed on behalf of Northlake an Extension and Amendment to Promissory Note, which amended the maturity date set forth in the February 10, 2001 Promissory Note. (Tr. Ex. BP-38). On July 16, 2001, Earwood executed on behalf of Northlake a Commercial Fixed Rate Promissory Note (the "July 16, 2001 Promissory Note") pursuant to which the February 10, 2001 Promissory Note was renewed and extended (Tr. Ex. BP-45; *see* Dkt. No. 94, pp. 8-9).

On November 27, 2001, Earwood executed on behalf of Northlake a Commercial Fixed Rate Promissory Note (the "November 27, 2001 Promissory Note") pursuant to which the July 16, 2001 Promissory Note was renewed and extended by Northlake in exchange for another deed of trust on the Property. (Tr. Ex. BP-54; *see* Dkt. No. 94, pp. 8-9). Also on November 27, 2001, and in order to secure repayment of the indebtedness evidenced by the November 27, 2001 Promissory Note, Earwood executed on behalf of Northlake a Deed of Trust on the Property in favor of BankPlus which was recorded on March 29, 2002 in Deed Book 285 at Page 137. (Tr. Ex. BP-132; *see* Dkt. No. 94, pp. 8-9).

On or about November 26, 2001, and in connection with the November 27, 2001 Promissory Note, BankPlus obtained another title certificate (the "Fourth Title Certificate") from the Earwood & Childers Firm which was again executed by Childers. The Fourth Title Certificate was virtually identical to the Third Title Certificate except that it certified that Northlake was the fee simple owner of the Property as of November 15, 2001 subject to the prior recorded Deeds of Trust and certain other unrelevant exceptions. (Tr. Ex. BP-56).

On April 8, 2002, Earwood executed on behalf of Northlake a Commercial Variable Rate Promissory Note (the "April 8, 2002 Promissory Note") pursuant to which Northlake borrowed additional funds from BankPlus in the principal amount of $19,268.50 in exchange for another deed of trust on the Property. (Tr. Ex. BP-71; *see* Dkt. No. 94, p. 8-9). Also on April 8, 2002, and in order to secure repayment of, *inter alia*, the indebtedness evidenced by the April 8, 2002 Promissory Note, Earwood executed on behalf of Northlake a Deed of Trust on the Property in favor of BankPlus which

was recorded on September 19, 2002 in Deed Book 288 at Page 17. (Tr. Ex. BP-72; *see* Dkt. No. 94, pp. 8-9).

On or about March 29, 2002, and in connection with the April 8, 2002 Promissory Note, BankPlus obtained another title certificate (the "Fifth Title Certificate") from the Earwood & Childers Firm which was again executed by Childers. The Fifth Title Certificate was very similar to the Fourth Title Certificate except that it certified that Northlake was the fee simple owner of the Property as of March 29, 2002 subject to the prior recorded Deeds of Trust and certain other unrelevant exceptions. (Tr. Ex. BP-77).

On October 3, 2002, Earwood executed on behalf of Northlake a Commercial Variable Rate Promissory Note (the "October 3, 2002 Promissory Note") pursuant to which Northlake borrowed additional funds from BankPlus in the principal amount of $50,118.50 in exchange for another deed of trust on the Property. (Tr. Ex. BP-87; *see* Dkt. No. 94, p. 8-9). Also on October 3, 2002, and in order to secure repayment of, *inter alia*, the indebtedness evidenced by the October 3, 2002 Promissory Note, Earwood executed on behalf of Northlake a Deed of Trust on the Property in favor of BankPlus which was recorded on October 21, 2002 in Deed Book 288 at Page 483. (Tr. Ex. BP-88; *see* Dkt. No. 94, pp. 8-9).

On or about September 19, 2002, and in connection with the October 3, 2002 Promissory Note, BankPlus obtained another title certificate (the "Sixth Title Certificate") from the Earwood & Childers Firm which was again executed by Childers. The Sixth Title Certificate was very similar to the Fifth Title Certificate except that it certified that Northlake was the fee simple owner of the Property as of September 19, 2002 subject to the prior recorded Deeds of Trust and certain other unrelevant exceptions. (Tr. Ex. BP-95).

On or about March 18, 2003, Earwood executed on behalf of Northlake an Extension and Amendment to Promissory Note, which amended the maturity date set forth in the October 3, 2002 Promissory Note. (Tr. Ex. BP-38).

On September 4, 2003, Earwood executed on behalf of Northlake a Commercial Variable Rate Promissory Note (the "September 4, 2003 Promissory Note") pursuant to which Northlake borrowed additional funds from BankPlus in the principal amount of $34,061.82 in exchange for another deed of trust on the Property. (Tr. Ex. BP-106; *see* Dkt. No. 94, p. 8-9). Also on September 4, 2003, and in order to secure repayment of, *inter alia*, the indebtedness evidenced by the September 4, 2003 Promissory Note, Earwood executed on behalf of Northlake a Deed of Trust on the Property in favor of BankPlus which was recorded on October 16, 2003 in Deed Book 294 at Page 673. (Tr. Ex. BP-107; *see* Dkt. No. 94, pp. 8-9).

On or about September 12, 2003, and in connection with the September 4, 2003 Promissory Note, BankPlus obtained a Certificate of Title from Stewart Title Company of Mississippi (the "Stewart Title Certificate of Title") rather than from the Earwood & Childers Firm. (Tr. Ex. BP-114). Much like the Title Certificates which BankPlus had obtained from the Earwood & Childers Firm (*see* Trial Tr. Vol. 3, p. 67:1-5), the Stewart Title Certificate of Title also certified that Northlake was the fee simple owner of the Property (in this case, as of September 12, 2003) subject to the prior recorded Deeds of Trust in favor of BankPlus and certain other unrelevant exceptions. The Stewart Title Certificate of Title further noted that those prior recorded Deeds of Trust contained an error in the property description set forth therein. (Tr. Ex. BP-114).[20]

Accordingly, on December 22, 2003, Earwood executed on behalf of Northlake an Amendment to Deeds of Trust in favor of BankPlus which was recorded on December 30, 2003 in Deed Book 296 at Page 155. This Amendment referenced the first five Deeds of Trust recorded in favor of BankPlus and corrected the property description error noted in the Stewart Title Certificate of Title. This Amendment also released certain property from the Property covered by the aforementioned Deeds of Trust, which property had initially been inadvertently included and/or had been sold to other parties. (Tr. Ex. BP-3).

---

[20] BankPlus also obtained subsequent Certificates of Title from Stewart Title on March 8, 2004, May 11, 2005, and August 27, 2006, all of which certified that Northlake was the fee simple owner of the Property. (*See* Dkt. No. 46, Underwood Expert Report, pp. 3 and 7).

On February 20, 2004, Earwood executed on behalf of Northlake a Commercial Fixed Rate Promissory Note (the "February 20, 2004 Promissory Note") pursuant to which the February 10, 2001 Promissory Note (as renewed and extended) was renewed and extended by Northlake in exchange for another deed of trust on the Property. (Tr. Ex. BP-135; *see* Dkt. No. 94, pp. 8-9). Also on February 20, 2004, and in order to secure repayment of, *inter alia*, the indebtedness in the principal amount of $463,952.30 now evidenced by the February 20, 2004 Promissory Note, Earwood executed on behalf of Northlake a Deed of Trust on the Property in favor of BankPlus which was recorded on March 8, 2004 in Deed Book 297 at Page 291 and which contains the same Property description as that which was set forth in Exhibit A to the Amended Complaint. (Tr. Ex BP-136; *see* Dkt. No. 94, pp. 8-9).[21]

BankPlus did not know at the time the Promissory Notes were executed and the BankPlus Deeds of Trust were recorded that Kinwood had an alleged interest in the Property adverse to Northlake or that the Kinwood Operating Agreement even existed. (*See e.g.* Trial Tr. Vol. 1, pp. 133:23-25, 134:1, and 179:14-22; Trial Tr. Vol. 2b, pp. 62:19-25 and 63:1-10). Indeed, BankPlus had not dealt with Kinwood as of that time, a fact which Plaintiffs conceded. (Dkt. No. 101, p.7; Trial Tr. Vol. 2b, pp. 48:16-23 and 50:5-7).

Northlake defaulted in connection with its obligations pursuant to the Promissory Notes, and, as such, BankPlus was scheduled to foreclose on the Property on September 15, 2006. (*See* Dkt. No. 94, pp. 2-3; *see also* Dkt. No. 79, p. 8). However, on September 14, 2006, Northlake filed the Petition which initiated the Bankruptcy Case and stayed the aforementioned foreclosure. (Dkt. No. 94, p. 3).

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court should have found BankPlus to be a bonafide purchaser of the Property because BankPlus paid valuable consideration in connection with its mortgaging of the Property

---

[21] The promissory notes (including extensions, renewals, and amendments thereof) described above are hereinafter sometimes referred to collectively as the "Promissory Notes" or the "Loans", and the debt evidenced by those Promissory Notes is sometimes referred to as the "Indebtedness". The seven Deeds of Trust and the one Amendment to Deeds of Trust described above are what has already been defined herein as the "BankPlus Deeds of Trust".

pursuant to the Promissory Notes and BankPlus Deeds of Trust, BankPlus paid the valuable consideration in good faith, and BankPlus did not have actual, constructive, or inquiry notice or knowledge of the adverse rights of Kinwood in the Property.

Further, the Bankruptcy Court should have found that the Kinwood Warranty Deeds were voidable rather than void, and, as a result of BankPlus' bonafide purchaser status, should have further found that the BankPlus Deeds of Trust created a valid and enforceable security interest in the Property in BankPlus' favor. In this regard, the Bankruptcy Court's reliance on the *Scarp* case for the proposition that the Kinwood Warranty Deeds were void was misplaced. In addition, the cases cited below by Plaintiffs in support of that same proposition are completely distinguishable and/or are contrary to Mississippi law. Indeed, the more persuasive, and analogous, authorities cited below and herein by BankPlus demonstrate that the Kinwood Warranty Deeds were not void but rather voidable, and, as such, subject to BankPlus' intervening rights as a bonafide purchaser. It would comport with sound public policy for this Court to find, based on BankPlus' cited authorities, that the BankPlus Deeds of Trust created a valid security interest in the Property.

Finally, should this Court decide that the Bankruptcy Court did not err when it held the Kinwood Warranty Deeds to be void rather than voidable, this Court should, in the alternative, find that the Bankruptcy Court erred when it failed to impose an equitable lien on the Property in favor of BankPlus.

## ARGUMENT

The first three issues presented for review, set forth above, are all interrelated because the resolution of each of those issues centers on whether the Bankruptcy Court should have found BankPlus to be a bonafide purchaser of the Property for value without notice, and, if so, what effect that should have on the Bankruptcy Court's express holdings that the Kinwood Warranty Deeds were null and void *ab initio* so that they did not convey title to the Property to Northlake, and that, as a direct result, the BankPlus Deeds of Trust were also null and void *ab initio* so that they did not create a valid and enforceable security interest in the Property in favor of BankPlus.

I.    **The Bankruptcy Court should have found BankPlus to be a Bonafide Purchaser of the Property for Value and Without Notice.**

BankPlus is a bonafide purchaser of the Property.  Under Mississippi law, a bonafide purchaser is defined as "one who has in good faith paid a valuable consideration without notice of the adverse rights of another." *Simmons v. Miss. Transp. Comm'n*, 717 So.2d 300, 303 (Miss. 1998).  Further, while the party asserting that it is a bonafide purchaser has the burden of establishing that status, proof of good faith payment of valuable consideration is *prima facie* evidence of the want of notice and the burden then shifts to the contesting party to establish notice. *Atkinson v. Greaves*, 11 So. 688, 688 (1892).

Accordingly, in order to establish that it is a bonafide purchaser of the Property, BankPlus must establish: (i) that BankPlus paid valuable consideration in connection with its mortgaging of the Property pursuant to the Promissory Notes and BankPlus Deeds of Trust (hereinafter sometimes referred to as the "Transactions"), and (ii) that BankPlus paid the valuable consideration in good faith.  Once BankPlus establishes items (i) and (ii), the burden then shifts to Plaintiffs, who are contesting BankPlus' bonafide purchaser status, to establish: (iii) that BankPlus had notice of the adverse rights of any others in the Property (i.e., the adverse rights of Kinwood in the Property). *Id.*

A.    **BankPlus paid valuable consideration in connection with the Transactions.**

It cannot reasonably be disputed that BankPlus paid valuable consideration in connection with the Transactions, and, indeed, the Bankruptcy Court made no factual or legal findings to the contrary. For, as established above, BankPlus loaned over $460,000 to Northlake pursuant to the Promissory Notes in exchange for the BankPlus Deeds of Trust being recorded in order to secure the repayment of those amounts, a fact conceded by Plaintiffs. (*See supra*, pp. 14-19; Dkt. 75, p. 20).

B.    **BankPlus paid the valuable consideration in good faith.**

BankPlus paid the valuable consideration in good faith.  As set forth above and discussed in more detail below in connection with the "without notice" requirement, *BankPlus did not know* at the time the Promissory Notes were executed and the BankPlus Deeds of Trust were recorded that Kinwood had an alleged interest in the Property adverse to Northlake or that the unrecorded Kinwood Operating

21

Agreement (including Article 4.1 thereof) even existed. Indeed, BankPlus had not dealt with Kinwood as of that time. (*See supra*, p. 19; *see infra*, pp. 23-32).

Instead, BankPlus loaned the subject amounts to Northlake via the Promissory Notes and in exchange for the BankPlus Deeds of Trust with the understanding: (i) that title to the Property was properly vested in Northlake pursuant to the initial Kinwood Warranty Deed, and (ii) that Earwood had full authority to borrow on behalf of Northlake and to pledge Northlake's assets as collateral. BankPlus' understanding in these regards were clearly in good faith considering the following.

First, on its face, the July 12, 2000 Kinwood Warranty Deed conveyed the Property from Kinwood to Northlake for consideration and contained an acknowledgment in the form prescribed by Mississippi law which was duly notarized. (*See supra*, p. 13).[22] Second, BankPlus obtained multiple Title Certificates from the Earwood & Childers Firm which certified that title to the Property was vested in Northlake, and BankPlus had no knowledge that, according to the Bankruptcy Court, Earwood actually did the related title search which led to the issuance of the First Title Certificate. (*See supra*, pp. 14-17).[23] As to this latter point, the Bankruptcy Court made no factual finding to the contrary in its Memorandum Opinion. Third, BankPlus also obtained multiple Certificates of Title from Stewart Title which likewise certified that title to the Property was vested in Northlake. (*See supra*, p. 18). Fourth, the Northlake Operating Agreement, a copy of which BankPlus obtained prior to the initial Promissory

---

[22] The fact that the Kinwood Conveyance occurred approximately one month before the initial August 15, 2000 Promissory Note is of no consequence. Indeed, it is commonplace in the banking and lending industry for a Warranty Deed conveying title to real property to a prospective mortgagor like Northlake to be executed and recorded on the *same day* the mortgagor mortgages the property in exchange for a loan. (*See* Dkt. No. 46, Underwood Expert Report, p 10). Similarly, it is common for an LLC to be formed for the purpose of receiving title to real property on or around the time a loan secured by such real property is made to that LLC. (Trial Tr. Vol. 3, p. 59:7-17).

[23] The fact that a member of Earwood's firm issued the subject Title Certificates on behalf of that firm is of no moment. Indeed, it is commonplace in the banking and lending industry for lenders to accept a title certificate issued by one member of a firm in connection with a transaction involving another member of the same firm. Similarly, title companies doing business in the state of Mississippi commonly allow a law firm to issue title insurance policies in favor of a firm member or his lender client as long as the related title examination was conducted by someone other than the party directly involved in the transaction (as BankPlus thought to be the case here). (*See* Dkt. No. 46, Underwood Expert Report, p 10; Trial Tr. Vol. 3, pp. 60:19-25 and 61:1-10). Further, the Earwood & Childers Firm had prepared title certificates for BankPlus in connection with prior, unrelated loans, and BankPlus believed the firm to be reputable in this regard. (Trial Tr. Vol. 2b, p. 67:12-19; *see also* Trial Tr. Vol. 2b, p. 68:3-13).

Note, provided that Earwood had full authority to borrow on behalf of Northlake and to pledge Northlake's assets as collateral. (*See supra*, p. 14).

In addition, BankPlus' actions in connection with the Transactions were reasonable and consistent with the usual and customary standards and practices of the banking and lending industry in Mississippi. (*See* Dkt. No. 46, Fillingim Expert Report, p. 2-3). And the Bankruptcy Court did not make any factual or legal findings to the contrary.

Finally, while the Bankruptcy Court found that Earwood himself engaged in a fraudulent scheme to convert Kinwood assets, including the Property involved herein, and further found that the Kinwood Warranty Deeds and BankPlus Deeds of Trust were a part of Earwood's fraudulent scheme, the Bankruptcy Court *did not find*, nor could it have found, that BankPlus was somehow complicit in, or somehow had knowledge of, that scheme. On the contrary, the Bankruptcy Court found that Earwood "was able to convince . . . BankPlus . . . that title to the Property was vested in Northlake," and even found that Earwood converted BankPlus Loan proceeds to his personal use. (*See* Dkt. No. 94, pp. 14-15,18-19). In other words, the Bankruptcy Court found that Earwood, and Earwood alone, was the bad actor here, and made no findings to suggest that BankPlus acted in anything other than good faith in connection with the Transactions.[24] Based on all of the foregoing, BankPlus clearly paid the valuable consideration in good faith.

### C.   BankPlus was without notice of the adverse rights of Kinwood in the Property.

As noted above, Plaintiffs have the burden of establishing that BankPlus had notice of the adverse rights of Kinwood in the Property. *Greaves*, 11 So. at 688. In order to meet their burden, Plaintiffs must establish that BankPlus had either actual, constructive, or inquiry notice or knowledge that there was a problem with the conveyance pursuant to the initial Kinwood Warranty Deed. *See*

---

[24] As set forth in footnote 10 above, the Bankruptcy Court did suggest that Earwood's fraud may have been discovered earlier "[h]ad an independent . . . title abstractor become involved at any point." (Dkt. No. 94, p. 19 at n. 14). While this statement does not impugn BankPlus' good faith in connection with the Transactions, it should be noted that an independent title abstractor (i.e., Stewart Title) was in fact involved several years prior to the initiation of the Bankruptcy Case, *see supra*, p. 18 and footnote 20, a fact that was apparently overlooked by the Bankruptcy Court

*Harrell v. Lamar Co., LLC*, 925 So. 2d 870, 876 (Miss. App. Ct. 2005) (citing *Bedford v. Kravis*, 622 So.2d 291, 295 (Miss. 1993).

### 1.    BankPlus was without actual notice of Kinwood's adverse rights.

It cannot reasonably be disputed that, at the time of the Transactions, BankPlus was without actual notice or knowledge that Kinwood had an interest in the Property which was adverse to Northlake. (*See supra*, p. 19). In fact, there is absolutely nothing in the record to contradict this conclusion, and, indeed, the Bankruptcy Court made no factual or legal findings to the contrary.

Instead, the record establishes that BankPlus had no actual knowledge of the unrecorded Kinwood Operating Agreement, that the July 12, 2000 Kinwood Warranty Deed appeared on its face to properly convey the Property from Kinwood to Northlake for consideration, that BankPlus obtained multiple Title Certificates (both from the Earwood & Childers Firm and from Stewart Title) which certified that title to the Property was vested in Northlake, and that the Northlake Operating Agreement, a copy of which BankPlus obtained prior to the initial Promissory Note, evidenced that Earwood had full authority to enter into the Transactions. All of these facts, in addition to the trial testimony cited above and the lack of any findings to the contrary by the Bankruptcy Court, conclusively demonstrate BankPlus' lack of actual notice or knowledge.

### a.    Earwood's knowledge cannot be imputed to BankPlus.

The Bankruptcy Court clearly found that Earwood had actual or notice knowledge of Kinwood's interest in the Property which was adverse to Northlake. (*See e.g.* Dkt. No. 94, p. 18). And in a part of the Plaintiffs' Motion to Alter or Amend which was denied by the Bankruptcy Court, Plaintiffs argued, for the first time, that Earwood's knowledge in this regard should be imputed to the Earwood & Childers Firm and then re-imputed from the Earwood & Childers Firm to BankPlus. (*See* Dkt. No. 101, p. 13).

Plaintiffs' argument in this regard appears to be based on two assertions and on the general rule of agency law set forth below. The first assertion is that Earwood was an agent of the Earwood & Childers Firm as a result of being a member of that firm. The second assertion is that the Earwood &

24

Childers Firm was an agent of BankPlus as a result of the title examinations and Title Certificates the firm issued to BankPlus.  And the general rule of agency law is that the knowledge an agent obtains while conducting the business of the principal is generally imputed to that principal. (*See generally* Dkt. No. 101, p. 13).  Notwithstanding the above, Plaintiffs' argument must fail for several reasons.

> **(i)      Earwood's knowledge cannot be imputed to BankPlus because Plaintiffs failed to prove that the Earwood & Childers Firm was the agent of BankPlus.**

The party asserting the existence of an agency relationship has the burden of proof in that regard. *McFarland v. Entergy Miss., Inc.* 919 So.2d 894, 902 (Miss. 2005); *Bogue Elec. Manufacturing Co. v. Coconut Grove Bank*, 269 F.2d 1, 4 (5th Cir. 1959).  And, in the case at hand, Plaintiffs did not offer any affirmative factual proof, at Trial or otherwise, to establish that the Earwood & Childers Firm was BankPlus' agent in connection with the title examinations and Title Certificates rather than merely an independent contractor of BankPlus, which, in and of itself, defeats Plaintiffs' argument that Earwood's actual knowledge should be imputed to BankPlus through the Earwood & Childers Firm.

> **(ii)     Earwood's knowledge cannot be imputed to BankPlus because the Earwood & Childers Firm was nothing more than an independent contractor for BankPlus.**

Based on the above and, as such, on the record before this Court, the Earwood & Childers Firm was nothing more than an independent contractor of BankPlus.  In *First Properties, LLC v. JPMorgan Chase Bank, NA*, 2008 WL 110477 (Ala. January 11, 2008), the Alabama Supreme Court addressed the issue of whether a title company that, according to the proof offered by the party asserting the existence of an agency relationship, performed a title search and prepared a title commitment for the benefit of a lender was acting as the lender's agent in that regard.  The court found that the proffered proof did not indicate that the transaction between the title company and the lender was anything other than a transaction involving an independent contractor relationship.  Due to the absence of an agency relationship, the court held that any alleged notice that the title company had in connection with a