SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAR 24 1988
CLARENCE A. PIERCE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

WELLS FARGO ARMORED SERVICE
CORPORATION                                                         PLAINTIFF

VERSUS                          CIVIL ACTION NO. S85-0594(NG)

JONEAN R. BILLINGSLY, PECANWOODS
SUBDIVISION, INC., FIRST NATIONAL
BANK OF SLIDELL, AND ALESIA
ROBICHAUX                                                         DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on stipulated facts for declaration of the respective rights of plaintiff Wells Fargo Armored Service Corporation (Wells Fargo) and defendant First National Bank of Slidell, Louisiana (FNB) relative to an 18.01 acre tract located in Picayune, Mississippi.

### Facts

1. James Broussard in conjunction with three accomplices robbed the Wells Fargo terminal in Memphis, Tennessee, on November 24, 1983. The monies on deposit stolen by Broussard and others amounted to $6,365,456.08, consisting of $5,660,860.45 in cash, $484,885.63 in negotiable bonds, and the remainder in food stamps and coupons.

2. On November 1, 1984, Broussard was convicted of the commission of said robbery.

3. Broussard, although married and while working as a New Orleans policeman, carried on a relationship beginning in 1973


EXHIBIT A

with Jonean Billingsly. Billingsly bore three children by Broussard, ages 12, 10, and 4.

4. On May 1, 1984, after the Wells Fargo robbery but prior to Broussard's arrest, Billingsly purchased 18.01 acres of property in Pearl River County, near Picayune, Mississippi. Billingsly paid $127,000 for the property, $117,000 by cashier's check and the remaining $10,000 was financed by the seller. The entire $117,000 constituted stolen funds transferred from Broussard to Billingsly during the thirty days prior to the purchase.

5. On August 31, 1984, Billingsly mortgaged the said 18.01 acres, less and except 2.76 acres which included a house, to FNB as collateral for a loan of $50,000.

6. On December 26, 1984, Billingsly executed an Assumption Warranty Deed transferring title to the said 18.01 acres, less and except 2.76 acres, to Pecanwoods Subdivision, Inc., a corporation formed by Billingsly, her mother, and her sister.

7. On January 17, 1985, Pecanwoods mortgaged the same property again, less and except the 2.76 acres to FNB as collateral for a $10,000 loan. As with the previous $50,000 loan, the proceeds were used to improve the property for development as a trailer park.

8. At the time of the August 31, 1984, and January 17, 1985, loans, FNB had no knowledge that stolen money was used to purchase the subject property. No notice appeared of record at that time reflecting Wells Fargo's claim.

2

9. Also on January 17, 1985, Pecanwoods mortgaged the property, less and except the 2.76 acres, to Alesia Robichaux, Billingsly's sister, ostensibly to secure a $200,000 loan.

10. On May 10, 1985, Wells Fargo filed suit against Billingsly and asserted, inter alia, that the property had been acquired by Billingsly with full knowledge that the funds had been stolen from Wells Fargo; Wells Fargo further asserted that its ownership of the funds was transferred to the purchased property.

11. On May 23, 1985, Wells Fargo filed a Notice of Lis Pendens in the official records of Pearl River County, Mississippi.

12. On February 14, 1986, Wells Fargo filed a Supplemental and Amended Complaint naming FNB, Pecanwoods, and Robichaux as defendants. Wells Fargo contended, inter alia, that the purported encumbrances to Pecanwoods, FNB, and Robichaux were null and void as they were executed by one not the owner, and, further, effected with the intent to defraud Billingsly's creditors, specifically, Wells Fargo.

13. On August 26, 1986, this Court granted a default judgment in favor of plaintiff and against Robichaux and Pecanwoods annulling the sale to Pecanwoods and the Deed of Trust executed in favor of Robichaux. However, FNB and Wells Fargo agree that the $10,000 mortgage granted to FNB by Pecanwoods would be considered as if granted by Billingsly.

14. On August 18, 1986, Billingsly filed a petition for relief under Chapter 13 of the Bankruptcy Code.

15. On November 21, 1986, the subject property, less and except 1.0 acre and the house located thereon, was abandoned by Billingsly in her bankruptcy proceeding to Wells Fargo, FNB and Broadway Engineers, Inc., a construction lien claimant. (Actually, this results in 1.76 acres of the 2.76 acres excluded from FNB's Deeds of Trust being abandoned to Wells Fargo and Broadway alone.)

16. The issue before the Court is, in view of the foregoing, whether FNB's mortgages from Billingsly are valid and therefore prevail over Wells Fargo's interests in 18.01 acres, less and except the 2.76 acres and house thereon.

## Discussion

Both parties assert a claim to fee simple title to the subject realty free and clear of any encumbrance. Wells Fargo urges that, as Billingsly acquired the property in question with stolen funds, she acquired no title to the realty and could not thereafter convey title to a subsequent purchaser. FNB contends that under the bona find purchaser doctrine it acquired unassailable title to the subject property.

Wells Fargo offers as sole support for its claim to clear title to the realty Textile Supplies, Inc. v. Garrett, 687 F.2d 123 (5th Cir. 1982) wherein the Fifth Circuit wrote:

> When Couch stole the carpet from Textile Supplies he acquired only "void title". American Standard Credit, Inc. v. National Cement Co., 643 F.2d at 268; Allstate Insurance Company v. Estes, 345 So.2d 265, 266 (Miss. 1977). He could not have passed valid title even to a good faith purchaser. Id.; Gurley v. Phoenix Insurance Co., 233 Miss. 58, 61, 101 So.2d 101, 102 (1958). Textile Supplies, therefore, retained title to the carpet even after Garrett obtained it from Couch. "[E]ven though the sale of the property is made to a

4

> bona fide purchaser for value, if it is stolen property, the person from whom it was stolen is not divested of his title." Walker v. Johnson, 354 So.2d 792, 793 (Miss. 1978).

Id. at 127.

The Court finds that Garrett is in no wise applicable to the instant case. Factually, Garrett involved stolen goods while the instant case involves stolen monies wrongfully used to purchase real property; legally, the rights and remedies of the parties in Garrett were controlled by the Uniform Commercial Code whereas the rights and remedies of the parties to the instant case are controlled by the common law principles of the State of Mississippi.

It appears to be a well accepted rule that where stolen or embezzled funds are wrongfully used to purchase realty in the name of the wrongdoer a constructive trust in the realty purchased comes into being for the benefit of the owner of the funds and the beneficiary of the trust may assert his right to the realty against any subsequent transferee of the wrongdoer except a bona fide purchaser for value. See Costello v. First National Bank, ___ Ala. ___, ___ 150, So.2d 683, 686 (1963); American Ry. Express Co. v. Houle, ___ Minn. ___, ___ 210 N.W. 889, 890 (1926); 3105 Grand Corp. v. New York, 288 N.Y.178, ___, 42 N.E.2d 475, 478 (1942); Lane Co. Escrow Service, Inc. v. Smith, 277 Or. 273, ___, 560 P.2d 608, 615 (1977). See generally Annot., 38 A.L.R. 3d 1354, Section 8 (1971); Restatement of Restitution Section 208 (1) comment a (1957).

Mississippi has long recognized that the bona fide purchaser doctrine accords to one who purchases realty for value having dealt in good faith without actual or constructive notice of any preexisting claims to or against the property title to the realty against the world. Giesbrecht v. Smith, 397 So.2d 73, 77 (Miss. 1981). Although the burden is on FNB to affirmatively establish its status as a bona fide purchaser, proof of payment of consideration in exchange for the deed of trust from Billingsly established FNB as a prima facie purchaser for value without notice, hence the burden rests on Wells Fargo to establish notice as to FNB of Wells Fargo's preexisting claim to the subject property. Atkinson v. Greaves, 70 Miss. 42, ____, 11 So. 688, 688 (1892). Under the facts as hereinabove stipulated, there can be no doubt but that at the time FNB obtained its deeds of trust to the subject property, the August 31, 1984, conveyance from Billingsly and the January 17, 1985, conveyance from Pecanwoods, FNB had no notice, actual or constructive, of Wells Fargo's outstanding claim to the mortgaged property. Unquestionably, FNB stands as a bona fide purchaser for value without notice as to the subject realty. See Fulgham v. Burnett, 151 Miss. 111, ____, 117 So. 514, 516 (1928). See generally 59 C.J.S. Mortgages Section 232 (1949).

Having determined that FNB is a bona fide purchaser of the subject property, it remains for the Court to determine what relief would be most equitable to the parties under the circumstances.

4

In *First National Bank v. Huff*, 441 So.2d 1317 (Miss. 1983), the bank had wrongfully cancelled a deed of trust and promissory note given to Huff as consideration for the purchase of realty by Barrett. Barrett paid the monthly installment on the promissory note to Huff until Barrett's death. Barrett's widow continued to pay the monthly installment on the Huff note until the time allowed for probating claims against Barrett's estate had expired. Thereafter, Mrs. Barrett ceased payments on the note; at this point the bank's error in wrongfully cancelling the deed of trust was discovered. Mrs. Barrett sold the property described in the cancelled deed of trust to the Taylors pursuant to court order. After the bank paid Huff the amount of the deed of trust that had been mistakenly cancelled, the bank, being subrogated to all rights and claims Huff had against Barrett and the Taylors, sought the imposition of a constructive trust or equitable lien in its favor as to the Taylor deed. Noting that the bank had suffered a loss due to its own negligence rather than the wrongful acts of another party the court wrote:

> [S]uit was filed after legal title was transferred to the Taylors from the Barretts. The Barretts do not hold legal title to the land upon which a construction trust is sought, and the Taylors are innocent third parties. Additionally, the Taylors are under no duty to convey the land, nor are they unjustly enriched in this transaction. Therefore, the transfer of title from the Barretts to the Taylors preclude the imposition of a constructive trust . . . . [T]he complaint here seeks also the imposition of an equitable lien . . . . Title having been transferred to the Taylors prevents the enforcement of a lien against the real estate itself . . . The real estate subject to an equitable lien has been sold to the Taylors and a substituted asset exists in the deed of trust form of the note for balance of the purchase price. [It remains to be] determin[ed] . . . what form of relief would be most equitable. [Possible alternatives to be

considered include] granting of a judgment against the Barrett heirs in favor of the Bank, or the imposition of a lien upon the Taylor note and deed of trust in favor of the Bank in the amount . . . provided in the Huff deed of trust.

Id. at 1321-22. But cf., United States v. Garcia, 532 F.Supp. 325, 333 (D.P.R. 1981) (under Puerto Rican law where party has used funds embezzled from United States to purchase real estate subsequently mortgaged to holders in good faith of note guaranteed by mortgages on the subject realty, title properly rests in United States with embezzlers obligated to either satisfy innocent third party mortgagors' liens on property or, where mortgagors had executed judgment against the realty, indemnify United States for any resultant decrease in value to subject property).

FNB urges that the Huff decision stands for the proposition that its position as bona fide purchaser with respect to the subject realty precluded Wells Fargo from impressing either a constructive trust or an equitable lien upon the property but rather forces Wells Fargo to seek redress from Billingsly, the party that has been unjustly enriched as were the Barrett heirs in Huff. Recognizing that FNB has accurately set forth the logical outcome of the Huff holding to the instant facts, the Court nonetheless finds that due to the unusual and distinguishing facts of this case, the equitable relief outlined in Huff is presently unworkable. First, and foremost, Huff did not involve stolen funds; secondly, in Huff the bank seeking equitable relief was principally responsible for the unprotected position in which it was placed by negligently cancelling the

8

deed of trust in the first instance whereas here both Wells Fargo and FNB are truly innocent parties; thirdly, in Huff, the Taylors were bona fide purchasers within the true sense whereas here FNB's status as as a bona fide purchaser arose not through a true purchase but rather as a result of a security instrument pledging realty as collateral for a loan upon default.

FNB's sole purpose in obtaining the deeds of trust to the subject property was simply to insure repayment of the loaned funds. Billingsly has defaulted on the loans and abandoned any interest she might have had in the property to FNB, Wells Fargo, and a third entity whose rights are not at issue here. Given that Billingsly, upon default, conveyed legal title to the realty to FNB by deed of trust, the only interest Billingsly retained in the property at the time of default was the right to any excess proceeds of a mortgage foreclosure sale. See generally, 55 Am.Jur.2d Mortgages Section 930 (1971); 59 C.J.S. Mortgages Section 799 (1949).

It seems fundamentally fair that FNB be allowed to proceed to foreclose on the subject realty under the terms of the deeds of trust; this is the essential right FNB bargained for in executing the deeds of trust/promissory notes with Billingsly. FNB, like most lending institutions, seeks no greater interest in this property than the right to recoup its losses from the land. FNB has no claim to, nor any right to claim, any excess proceeds derived from the foreclosure sale. Rather, as Billingsly would normally have been entitled to any excess proceeds obtained at foreclosure, Wells Fargo, whose funds were actually used in the

9

purchase of this property, is entitled to any surplusage. Although, this might appear at first blush to leave Wells Fargo without any substantive relief, the Court feels that FNB should be mindful of the obligation imposed under the deeds of trust at foreclosure to "act fairly to protect the rights of all parties equally" and "to sell the land in such a manner as will be most beneficial to [Wells Fargo]." Lake Hillsdale Estates, Inc. v. Galloway, 473 So.2d 461, 465 (Miss. 1985).

In summary, the Court concludes that FNB stands as a bona fide purchaser with respect to the subject property and may proceed to the foreclosure on the same being aware of its duty, heightened under the particular fact, to conduct foreclosure in a manner most beneficial to Wells Fargo. Wells Fargo is only entitled to all surplus proceeds from the aforementioned foreclosure sale having been denied under Huff any recourse, legal or equitable, in the subject land as against FNB.

Counsel for FNB shall submit a judgment in conformity with the foregoing Memorandum Opinion within ten (10) days from the date hereof.

DATED, this the 22nd day of March, A.D., 1988.

_____
UNITED STATES DISTRICT JUDGE

10