IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**BANKPLUS**                                                                      **APPELLANT**

**VS.**                                          **CIVIL ACTION NO. 3:08-cv-00498-DPJ-JCS**

**KINWOOD CAPITAL GROUP, L.L.C.**
**AND GEORGE KINIYALOCTS, INDIVIDUALLY**
**AND AS GENERAL PARTNER OF KINIYALOCTS**
**FAMILY PTRS. I, LTD.**                                              **APPELLEES**

---

ON APPEAL FROM
THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**IN RE:**

**NORTHLAKE DEVELOPMENT, L.L.C.**                    **CASE NO. 06-01934-NPO**
**DEBTOR**                                                          **CHAPTER 11**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**KINWOOD CAPITAL GROUP, L.L.C.**
**AND GEORGE KINIYALOCTS, INDIVIDUALLY**
**AND AS GENERAL PARTNER OF KINIYALOCTS**
**FAMILY PTRS. I, LTD.**                                             **PLAINTIFFS**

**VS.**                                          **ADV. PRO. NO. 06-00171-NPO**

**NORTHLAKE DEVELOPMENT, L.L.C.**
**AND BANKPLUS**                                                     **DEFENDANTS**

---

REBUTTAL BRIEF
OF APPELLANT BANKPLUS

---

TABLE OF CONTENTS

PAGE(S)

TABLE OF CONTENTS  .................................................................................................i

TABLE OF AUTHORITIES .......................................................................................... iii

INTRODUCTION ...........................................................................................................1

REBUTTAL ARGUMENTS .........................................................................................1

     I.     Plaintiffs' assertion that this Court should disregard and strike BankPlus'
references to the Underwood Expert Report and the Fillingim Expert Report is
without merit..............................................................................................................1

     II.    Plaintiffs' assertion that the Kinwood Warranty Deeds were void *ab initio,* and
that, as a result, the BankPlus Deeds of Trust were also void *ab initio* is without
merit...........................................................................................................................3

          a.     Plaintiffs' assertion that the Kinwood Warranty Deeds were necessarily
void based on certain purported findings of fact by the Bankruptcy Court
is without merit ..................................................................................3

          b.     Plaintiffs are incorrect in their assertion that the Kinwood Warranty Deeds
were necessarily void based on the Mississippi Limited Liability Act ......6

          c.     Plaintiffs are incorrect in their assertion that BankPlus' BFP argument is
irrelevant..............................................................................................8

          d.     Plaintiffs' assertion that the Kinwood Warranty Deeds were necessarily
void based on general principles of personal property law is without
merit....................................................................................................9

          e.     The more persuasive, analogous authorities demonstrate that the Kinwood
Warranty Deeds were voidable rather than void, and, as
such, that the  BankPlus Deeds of Trust created a valid security
interest in the Property due to BankPlus' BFP status ................................10

          f.     Sound public policy favors a finding by this Court that the
BankPlus Deeds of Trust are valid and enforceable...................................12

     III.    Plaintiffs' assertion that BankPlus is not and could not be a  BFP is without
merit.........................................................................................................................13

IV.   Plaintiffs' assertion that this Court should not consider BankPlus' argument that the Bankruptcy Court erred when it failed to impose an equitable lien in favor of BankPlus is without merit.................................................................15

V.    Plaintiffs' assertion that BankPlus is not entitled to an equitable lien is without merit.......................................................................................................................16

VI.   Plaintiffs' assertion BankPlus' appeal is frivolous is without merit.......................17

CONCLUSION ..................................................................................................................18

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Amedisys, Inc. v. JP* Morgan *Trust Manhattan Bank,*
    334 B.R. 907 (Bank. S.D. Ohio 2005)..................................................................2

*Belk Const. Co. v. S.F. Kennedy New Prods., Inc.,*
    4 B.R. 132 (Bankr. N.D. Miss. 1980).................................................................10

*Blue River Co. v. Summit County Dev. Corp.,*
    207 F. Supp. 283 (D. Colo. 1062) .....................................................................12

*Boston & M. Consol. C. & S. Mining co. v. Montana Ore Purchasing Co.,*
    89 F. 529 (D. Mont. 1898)..................................................................................12

*Chase Fed. S & L Ass'n v. Schreiber,*
    479 So. 2d 90 (Fla. 1985) ....................................................................................5

*Cumberland Capital Corp., Inc. v. Robinette,*
    331 So.2d 709 (Ala. Ct. Civ. App. 1976) ..........................................................11

*De Bardeleben Coal Corp. v. Parker,*
    144 So. 474 (Miss. 1932).................................................................................5, 6

*Ewing v. Cargill,*
    1849 WL 2305 (Miss. Err. & App. 1849) ...........................................................5

*First Interstate Bank of Sheridan v. First Wyoming Bank,*
    762 P. 2d 379 (Wyo. 1988)..................................................................................5

*Guice v. Burrage,*
    156 F.2d 304 (5th Cir. (Miss.) 1946).................................................................11

*Hall v. Farmers' & Merchants' Bank,*
    46 S.W. 1000 (Mo. 1898) .................................................................................12

*Harrison v. City of New Bern,*
    137 S.E. 582 (N.C. 1927) ..................................................................................12

*In re T. Michaelis Corvette Supplies, Inc.,*
    14 B.R. 365 (Bankr. N.D. Ohio 1981)..............................................................1, 2

*Isom v. Nutting,*
   113 S.E. 197 (Ga. 1922) ........................................................................... 5

*Jordan v. McNeil,*
   1881 WL 863 (Kan. 1881) ........................................................................ 5

*Jordan v. Moore,*
   3 So. 737 (Miss. 1888) .............................................................................. 5

*Kane Enterprises v. MacGregor,*
   322 F. 3d 371 (5th Cir. 1993) ............................................................... 16

*Lee v. Boyd,*
   16 So.2d 30 (Miss. 1943) ..................................................................... 5, 12

*Likowski v. Catlett,*
   265 P. 117 (Okla. 1928) ........................................................................... 5

*Mills v. Damson Oil Corp.,*
   686 F.2d 1096 (5th Cir. 1982) .............................................................. 14

*Osborne v. Cooper,*
   21 So. 320 (Ala. 1896) ............................................................................. 5

*Overhoff v. Scarp, Inc.,*
   12 Misc. 3d 350 [812 N.Y.S.2d 809, 819] (N.Y. Sup. 2005) ............... 6

*Plunk v. Yaquinto (In re Plunk),*
   481 F.3d 302 (5th Cir. 2007) ................................................................. 4

*Rolling "R" Construction, Inc. v. Dodd,*
   477 So. 2d 330 (Ala. 1985) ...................................................................... 5

*Sanders v. Sorrell,*
   3 So. 661 (Miss. 1888) ........................................................................... 12

*Thornton v. North Am. Acceptance Corp.,*
   184 S.E. 2d 589 (Ga. 1979) ..................................................................... 5

*U.S. v. Burke,*
   781 F.2d 1234 (7th Cir. 1985) ............................................................... 2

*Wells Fargo v. Billingsly,*
   Civil Action No. S85-0594(NG) .............................................................. 9

iv

*Wolfe v. Estate of Wolf,*
   756 So.2d 788 (Miss. App. 1999) ..................................................................................6

STATUTES AND OTHER AUTHORITIES

26A C.J.S. Deeds § 148 ........................................................................................................4

Bankruptcy Rule 8006 .................................................................................................1, 2, 3

Bankruptcy Rule 8009 .........................................................................................................1

Bankruptcy Rule 8013 .........................................................................................................4

Colliers on Bankruptcy § 8006.03[1] 2007 ........................................................................2

Colliers on Bankruptcy § 8006.03[2] 2007 ........................................................................1

Fed. R. App. Pro. 10(a) ....................................................................................................1, 2

Miss. Code Ann. § 15-3-1 (1972) ......................................................................................12

Miss. Code Ann § 89-3-7 ....................................................................................................3

Miss. Code Ann. §303(3) and (4) ........................................................................................7

## INTRODUCTION

In response to the brief filed by the Appellees (the "AE Brief") (Dist. Crt. Dkt. No. 8), Appellant BankPlus submits its Rebuttal Brief for this Court's consideration pursuant to Bankruptcy Rule 8009.[1]

## REBUTTAL ARGUMENTS

**I.    Plaintiffs' assertion that this Court should disregard and strike BankPlus' references to the Underwood Expert Report and the Fillingim Expert Report is without merit.**

Plaintiffs assert, without citing any supporting authority, that this Court should disregard and strike the references contained in BankPlus' Appellant Brief to the Underwood and Fillingim Expert Reports. (AE Brief, p.2). The apparent basis for their assertion is that these reports were "filed in discovery" but not "admitted into evidence at trial". (*Id.*). Plaintiffs' assertion is completely without merit for several reasons.

First, it is axiomatic that this Court can and should consider the entire record which is properly before it on appeal. With this in mind, Bankruptcy Rule 8006 provides that "[t]he record on appeal shall include the items so designated by the parties, the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court." Both the Underwood and Fillingim Expert Reports were, without question, items designated by BankPlus to be included in the record on appeal pursuant to the foregoing rule. (Dist. Crt. Dkt. No. 1, p. 2; Dkt Nos. 123, 148).

Second, in interpreting Bankruptcy Rule 8006, a leading bankruptcy treatise observed that "the record on appeal should consist of the pleadings, papers and exhibits . . . filed in the . . . adversary proceeding . . . which gave rise to the appeal." Colliers on Bankruptcy ("Colliers") § 8006.03[2] (2007). Both the Underwood and Fillingim Expert Reports undoubtedly constitute "papers" which were filed with the Bankruptcy Court in the Adversary Proceeding giving rise to the instant appeal, *see* Dkt. No. 46, and, as such, this Court can and should consider those experts reports herein.

Third, the same conclusion results from a Fed. R. App. Pro. 10(a) analysis. This is significant because Bankruptcy Rule 8006 is partly patterned after that rule and, as such, courts often look to that rule and the decisions related thereto for guidance in interpreting Bankruptcy Rule 8006. *See In re T. Michaelis Corvette*

---

[1] For the sake of brevity and consistency, BankPlus will, where possible, use herein the defined terms set forth in its initial Appellant Brief (the "AP Brief") (Dist. Crt. Dkt. Nos. 4-5) and will continue to refer to the Appellees collectively as "Plaintiffs". BankPlus will also maintain the format used in the Appellant Brief in connection with references to the record and docket.

*Supplies, Inc.*, 14 B.R. 365, 366 (Bankr. N.D. Ohio 1981)[2]; *accord* Colliers § 8006.03[1].  Under Fed. R. App. Pro. 10(a), which provides in part that "[t]he following items constitute the record on appeal: (1) the original papers and exhibits filed in the district court . . . ", the only test of whether a paper is properly part of the record on appeal is whether it was filed in the district court.  Colliers § 8006.03[1].

Based on the foregoing, Plaintiffs' assertion that this Court should disregard the references to the Underwood Expert Report and the Fillingim Expert Report should itself be disregarded.  In addition, this Court should also consider these reports because to do so will afford it a complete understanding of the case and proceedings below.  *See Corvette Supplies,* 14 B.R. at  367 ("[t]he record on appeal . . . should contain the documentation necessary to afford the reviewing court a complete understanding of the case." ).  Plaintiffs cannot in good faith contest this given that they themselves designated the report of their expert as an item to be included in the record on appeal.  (Dist. Crt Dkt. No. 1, p. 2; Dkt No. 125, 152).

Further, the Bankruptcy Court was undoubtedly aware that the subject reports had been filed and, in fact, considered those reports in connection with the Second Amended Final Judgment from which BankPlus has appealed.  (*See* Trial Tr. Vol. 2b, pp. 19:15-25, 20:1-22; Vol. 3, pp. 16:8-22 and 48:3-6).  To the extent Plaintiffs believe otherwise, they should have raised the issue with the Bankruptcy Court and should not be allowed to raise it now.  *See Amedisys, Inc. v. JP Morgan Trust Manhattan Bank*, 334 B.R. 907, 912-14 (Bank. S.D. Ohio 2005) (adopting the majority view that "authority (over the record on appeal) should remain with the bankruptcy court" because that court is in the best position to "know[] whether the parties placed the items in dispute before [it] prior to its issuance of an appealable order.") (citing cases).

Finally, the fact that the subject reports were not admitted into evidence at trial is irrelevant.  *See U.S. v. Burke*, 781 F.2d 1234, 1246 (7th Cir. 1985) (finding, in the context of Fed. R. App. Pro. 10(a), that "the rules do not limit the record to items admitted in evidence" and denying appellant's motion to strike accordingly).[3]  If the record on appeal were so limited, that would lead to the absurd conclusion that the record could not properly include, and that this Court could not properly consider on appeal, Plaintiffs' Amended

---

[2] While this case actually dealt with Bankruptcy Rule 806, that rule was a precursor to, and was in all relevant respects virtually identical to, Bankruptcy Rule 8006.

[3] There is likewise nothing in Bankruptcy Rule 8006 which limits the record to items admitted in evidence.

Complaint, BankPlus' Answer thereto, the Bankruptcy Court's Pretrial Order, and the like, many of which filings Plaintiffs themselves cite to in their brief. (*See e.g.* AE Brief, p. 3).

Even assuming *arguendo* this Court decides Plaintiffs' assertion somehow has merit and decides that Plaintiffs have not waived the right to raise this issue due to their failure to bring an appropriate motion in the Bankruptcy Court, BankPlus notes that there is ample support in other parts of the record and/or in applicable law in virtually every instance where BankPlus referenced the subject reports.[4]

## II.    Plaintiffs' assertion that the Kinwood Warranty Deeds were void *ab initio*, and that, as a result, the BankPlus Deeds of Trust were also void *ab initio* is without merit.

Plaintiffs argue that the Kinwood Warranty Deeds were void and that, as such, the BankPlus Deeds of Trust were also void and did not create a valid security interest in the Property. (AE Brief, pp. 21-32).

### a.    Plaintiffs' assertion that the Kinwood Warranty Deeds were necessarily void based on certain purported findings of fact is without merit.

Plaintiffs assert that the Kinwood Warranty Deeds "could have been nothing but void" because of the following Bankruptcy Court findings which Plaintiffs erroneously state were all findings of fact that are uncontested by BankPlus herein: (i) that Earwood lacked express or apparent authority to transfer the Property from Kinwood to Northlake via the Kinwood Conveyance, (ii) that no consideration was given by Northlake to Kinwood in connection with the Kinwood Conveyance, and (iii) that Northlake never acquired title to the Property via the Kinwood Conveyance. (*See* AE Brief, pp. 13-15, 21-24). Plaintiffs' assertion in this regard is fundamentally flawed for at least three reasons.

---

[4] Specifically: (i) the Kinwood Operating Agreement or an abstract thereof could have been recorded in the Land Records or filed with the Mississippi Secretary of State (*see* AP Brief, p. 13 reference to the Underwood Expert Report; *see also* Trial Tr. Vol. 3, pp. 57:11-25, 58:1-25, and 59:1-4); (ii) the Kinwood Warranty Deed contains an acknowledgment in the form prescribed by Mississippi law and is duly notarized (*see* AP Brief, p. 13 reference to the Underwood Expert Report; *see also* Tr. Ex. BP-1; Miss. Code. Ann. § 89-3-7); (iii) BankPlus obtained additional Certificates of Title from Stewart Title subsequent to the one it obtained on September 12, 2003, all of which certified that Northlake was the fee simple owner of the Property (*see* AP Brief, p. 18 n. 20 reference to the Underwood Expert Report; *see generally* Trial Tr. Vol. 3, p. 67:1-5); (iv) the fact that a member of Earwood's firm issued the Title Certificates on behalf of that firm is of no moment (*see* AP Brief, p. 22 n. 23 reference to the Underwood Expert Report; *see also* Trial Tr. Vol. 3, pp. 13:19-25, 14:1-6, 16:1-7, 20:3-23, 40:16-20; 60:19-25, and 61:1-16); (v) BankPlus' actions in connection with the Transactions were reasonable and consistent with the usual and customary standards and practices of the banking and lending industry in Mississippi (*see* AP Brief, p. 23 reference to the Fillingim Expert Report; *see also, e.g.,* Trial Tr. Vol. 3, pp. 7-10:1-11, 18:6-25, and 19:11 ); and (vi) Kiniyalocts failed to discover the Kinwood Conveyance for over six years (*see* AP Brief, p. 40 n. 34 reference to the Underwood Expert Report; *see also* Trial Tr. Vol. 2a, pp. 91:22-25 and 92:1-5).

First, the foregoing findings were not all purely findings of fact (which must be reviewed for clear error) rather than conclusions of law (which must be reviewed *de novo*[5]).[6]

Second, while BankPlus is not contesting on appeal the Bankruptcy Court's authority-related findings or the factual finding that no consideration was given in connection with the Kinwood Conveyance, BankPlus is *certainly* contesting the legal conclusion that the Kinwood Warranty Deeds were void rather than voidable and that, as such, those deeds did not convey title to Northlake. Indeed, BankPlus convincingly argued in its Appellant Brief that, *even assuming* Earwood lacked express or apparent authority to transfer the Property from Kinwood to Northlake such that the conveyance was in contravention of the unrecorded Kinwood Operating Agreement, the Bankruptcy Court nevertheless erred *as a matter of law* when it held that the Kinwood Warranty Deeds were void and did not pass any title to Northlake (in which case the Property was arguably not subject to BankPlus' intervening rights as a bonafide purchaser of the Property for value and without notice, or "BFP") rather than *voidable* (in which case the Property was clearly subject to BankPlus' intervening BFP rights[7]), and when it held as a direct result that the BankPlus Deeds of Trust were also void and did not create a valid security interest in the Property in BankPlus' favor. (*See* AP Brief, pp. 32-40).

Third, while a fair reading of the Memorandum Opinion plainly establishes that the foregoing two holdings were not based on the Bankruptcy Court's consideration-related finding[8], a lack of consideration does

---

[5] *See Plunk v. Yaquinto (In re Plunk)*, 481 F.3d 302, 305 (5th Cir. 2007); *see also* Bankruptcy Rule 8013.

[6] Rather, the finding that Earwood lacked express authority was a mixed finding of fact (with respect to whether Mr. Kiniyalocts gave Earwood authority to transfer the Property) and conclusion of law (with respect to whether the Kinwood Operating Agreement provided Earwood with such authority), the finding that Earwood lacked apparent authority was a conclusion of law, the finding that no consideration was given in connection with the Kinwood Conveyance was a finding of fact, and the finding that Northlake never acquired title to the Property via the Kinwood Conveyance was a pure conclusion of law predicated solely on the erroneous legal conclusion that the Kinwood Warranty Deeds were void rather than voidable. (*See* Dkt. No. 94, p. 10).

[7] "[A] voidable deed passes a defeasible title which may be set aside except when it is acquired by an innocent purchaser for value." 26A C.J.S. *Deeds* § 148. See also the cases discussed on pp. 33-38 of the Appellant Brief.

[8] Rather, the Bankruptcy Court based its holding that the Kinwood Warranty Deeds were void on its finding that, because Earwood lacked either express or apparent authority to convey the Property from Kinwood to Northlake (facts not known to BankPlus at the relevant time), Earwood's actions in this regard were in contravention of the Kinwood Operation Agreement and actions in contravention of such LLC operating agreements are "null, void and of no effect" under the New York *Scarp* decision of first impression. As a direct result, and without considering BankPlus' BFP status, the Bankruptcy Court then held that the BankPlus Deeds of Trust did not create a valid security interest in the Property. (*See* AP Brief, pp. 5-7).

4

not change the conclusion that the Kinwood Conveyance was not void but voidable, and, as such, subject to BankPlus' BFP rights.[9]

In the instant case, the July 12, 2000 Kinwood Warranty Deed appeared on its face to convey the Property from Kinwood to Northlake for consideration. (Ex. BP-1[10]). Further, there is nothing in the record to suggest that BankPlus knew that no consideration was given, and the Bankruptcy Court made no findings to the contrary. Accordingly, and based on the cases set forth above, Plaintiffs' assertion that the Kinwood Warranty Deeds were void due to the absence of consideration is without merit. Instead, the Kinwood Warranty Deeds were, at most, merely voidable and subject to BankPlus' intervening BFP rights.

It should be noted that Plaintiffs cited two cases for the alleged proposition that conveyances without consideration are void. (AE Brief, p. 31). However, these cases do not stand for the proposition that conveyances without consideration are void and are also distinguishable from the instant case. In *De Bardeleben Coal Corp. v. Parker*, Parker became indebted to De Bardeleben and, soon thereafter, deeded his interest in certain land he had inherited from his deceased father to his mother. The deed recited that the conveyance was in payment for an eight year old debt his father owed to his mother in connection with the purchase of the land. *Id.* at 475. Parker had no personal obligation to pay that debt and had not assumed that debt from his father. Thus, the issue in *Parker*, unlike the case at hand, was whether an unenforceable "moral [but not a legal] obligation" is considered a sufficient consideration to support a deed that would take priority

---

[9] *See e.g. Ewing v. Cargill*, 1849 WL 2305 *4 (Miss. Err. & App. 1849) ("a [BFP] under a deed . . . *not void upon its face* cannot be affected by any intended fraud of the grantor in the deed"); *Isom v. Nutting*, 113 S.E. 197, 199 (Ga. 1922) (a deed completely unsupported by consideration that showed valuable consideration on its face is *voidable*, not void, and subject to an intervening BFP's rights); *Osborne v. Cooper*, 21 So. 320, 322 (Ala. 1896) (a deed unsupported by any consideration cannot be avoided as to a BFP); *Chase Fed. S & L Ass'n v. Schreiber*, 479 So. 2d 90 (Fla. 1985) (same); *First Interstate Bank of Sheridan v. First Wyoming Bank*, 762 P. 2d 379, 384 (Wyo. 1988) (a deed unsupported by consideration is *voidable* rather than void and, accordingly, subject to a BFP's intervening rights); *Likowski v. Catlett*, 265 P. 117, 121 (Okla. 1928) ("the fact of lack of consideration or fraud rendering the deed *voidable* could not affect . . . innocent purchasers for value without notice"); *Jordan v. McNeil*, 1881 WL 863 (Kan. 1881) (Where a grantee obtains a deed without consideration, takes possession under the deed, and afterward conveys the land to a BFP, the BFP obtains a valid title as against the first grantor); *Lee v. Boyd*, 16 So.2d 30, 30 (Miss. 1943) ("The relief of cancellation will not be granted against a bona fide purchaser for value and without notice for the fraud *or other ground for cancellation*.").
[10] The fact that a potentially nominal monetary consideration is recited in that deed (i.e., "the sum of Ten Dollars ($10.00), cash in hand paid, and other good and valuable consideration") does not make the conveyance void or give a subsequent purchaser notice that warranty deed might be defective. *Thornton v. North Am. Acceptance Corp.*, 184 S.E. 2d 589, 589 (Ga. 1979) (deed's recitation of consideration as being "$10 and other good and valuable consideration" was not invalid for lack of consideration); *Rolling "R" Construction, Inc. v. Dodd*, 477 So. 2d 330, 333 (Ala. 1985) (deed's recitation of consideration as being "One dollar and all other good and valuable consideration" did not put subsequent purchaser on notice that conveyance was fraudulent); *Jordan v. Moore*, 3 So. 737, 738 (Miss. 1888) ("no trust resulted to the grantor from the deed, for it recites a pecuniary consideration, though nominal").

over the claim of Parker's existing creditor, De Bardeleben. *Id.* The Court held that it was not. In so holding, and contrary to what the Plaintiffs represent in their brief, the court never expressed, or even suggested, a general rule that conveyances without consideration are "void".

In *Wolfe v. Estate of Wolf*, Mrs. Wolfe, the widow of the decedent, conveyed property to another as a gift via a deed which did not recite that any consideration was given. The issue in *Wolfe* was *not* whether the conveyance was invalid due to lack of consideration. Rather, the issue was solely whether Mrs. Wolfe had the power to make the conveyance since she was merely a life tenant of the property, which issue was governed by the will that created her life tenancy. Because that will stated that Mrs. Wolfe could only convey the property by sale, and provided who was entitled to the proceeds from such a sale, the Court held that Mrs. Wolfe could not convey the property to another as a gift without consideration. *Id.* at 792. As such, and contrary to what the Plaintiffs represent in their brief, the Court never held that conveyances without consideration are "void".

**b.    Plaintiffs are incorrect in their assertion that the Kinwood Warranty Deeds were necessarily void based on the Mississippi Limited Liability Act.**

In the Memorandum Opinion, the Bankruptcy Court first held that the Kinwood Warranty Deeds were void ab *initio* and did not convey title to the Property to Northlake. (Dkt. No. 94, p. 10). A fair reading of that Opinion establishes that the Bankruptcy Court's holding in this regard was based on two findings, along with the *Scarp* case of first impression from New York. Indeed, the Bankruptcy Court first found that Earwood lacked express authority to execute the Kinwood Warranty Deeds on behalf of Kinwood because Article 4.1 of the unrecorded Kinwood Operating Agreement provided that the execution of such a warranty deed required Kiniyalocts' express approval and Kiniyalocts had not given that approval to Earwood. (Dkt. No. 94, pp. 16-17). Second, the Bankruptcy Court found that Earwood lacked apparent authority to execute the Kinwood Warranty Deeds on behalf of Kinwood because Earwood, as 100% owner of Northlake, knew that Earwood, as minority owner of Kinwood, had no authority to act for Kinwood without Kiniyalocts's express approval. (Dkt. No. 94, pp. 17-18). Based on the foregoing two findings and the *Scarp* decision, the Bankruptcy Court summarized its holding as follows (see Dkt. No. 94, p. 18):

> Actions taken by an LLC member [such as Earwood] in contravention of the LLC Operating Agreement [i.e., the unrecorded Kinwood Operating Agreement] are null, void and of no effect. *See Overhoff v. Scarp, Inc.*, 12 Misc. 3d 350, 362 [812 N.Y.S.2d 809, 819] (N.Y. Sup.

2005).  In that Earwood lacked either express authority or apparent authority to convey the Property from Kinwood to Northlake, the Kinwood Warranty Deed was void *ab initio* and conveyed nothing.

The Bankruptcy Court then held that the BankPlus Deeds of Trust did not create a valid security interest in the Property, stating:

> [For the reasons quoted above] [t]he Kinwood Warranty Deed conveyed no interest in the Property to Northlake, and consequently, Northlake had no interest in the Property to convey to BankPlus.  Thus, the BankPlus Deed of Trust, executed by Earwood on behalf of Northlake, did not create a valid security interest in the Property in favor of BankPlus.

Accordingly, it appears abundantly clear that the Bankruptcy Court's holding that the Kinwood Warranty Deeds were void ab *initio* was based on the *Scarp* Court's conclusion that "[a]ctions taken by an LLC in contravention on the LLC Operating Agreement are . . . void."

Plaintiffs, however, assert that the Bankruptcy Court also based its conclusion that actions taken in contravention on an LLC operating agreement are void, which legal conclusion led to the ultimate holding that the Kinwood Warranty Deeds were void, on certain provisions of the Mississippi Limited Liability Act (the "Act").  (AE Brief, p. 25).   However, while the Bankruptcy Court did touch on the Act in the introductory portion of its discussion as a means of transitioning into its analysis of the Kinwood Operating Agreement, the Bankruptcy Court did not in any way indicate that its holdings were based on the Act.

Even assuming *arguendo* this Court agrees that the Bankruptcy Court based its legal conclusion that actions taken in contravention on an LLC operating agreement are void at least in part on the Act, that does not change the fact that the Bankruptcy Court ultimately erred when it found the Kinwood Warranty Deeds (and, therefore, the BankPlus Deeds of Trust) to be void rather than voidable.  Indeed, much like the *Scarp* case, the provisions of the Act espoused by Plaintiffs arguably do not take into account the intervening rights of a BFP. *See* Miss. Code Ann. §303(3) and (4).[11]  Plaintiffs' own expert testified to this effect. (Tr. Trans. Vol. 2b, p. 43:7-13).  This is significant because BankPlus set forth numerous cases in its Appellant Brief which stand for

---

[11] Then again, those provisions arguably do take a BFP's rights into account in a manner favorable to BankPlus.  For example, Section 79-29-303(4) provides that "No act of a manager or member in contravention of a restriction on authority shall bind the [LLC] to persons having knowledge of the restriction."  This provision arguably stands for the proposition that, despite his lack of authority, Earwood's act in conveying the Property binds Kinwood to BankPlus because BankPlus, as a BFP, had no knowledge of any restriction on Earwood's authority.

the proposition that a conveyance of real property by a corporation[12] which is *ultra vires* (i.e., not positively

forbidden, but impliedly forbidden because not expressly or impliedly authorized[13]) is not void, but rather

voidable such that it passes title. (*See* AP Brief, p. 37).

 c. **Plaintiffs are incorrect in their assertion that BankPlus' BFP argument is irrelevant.**

 Plaintiffs make the somewhat incredulous, repeated assertion that whether or not BankPlus is a BFP

(and, therefore, whether or not the Act, the *Scarp* case, and the like take into account the intervening rights of a

BFP) is an irrelevant argument that this Court should not reach because, according to Plaintiffs, the Kinwood

Conveyance was void *ab initio* and therefore passed no title to Northlake, and, as a result, the BankPlus Deeds

of Trust were also void. (*See* AE Brief, pp. 18-19, 26, 31). In other words, Plaintiffs assert that, *assuming* the

Bankruptcy Court was correct in its holding that the Kinwood Conveyance was void rather than voidable,

BankPlus' BFP argument is irrelevant.

 The fallacy of Plaintiffs' reasoning in this regard is palpable. Indeed, BankPlus is arguing, *inter alia*,

that the Bankruptcy Court erred, as a matter of law subject to *de novo* review, when it adjudicated that the

Kinwood Warranty Deeds were void (in which case the Property was arguably not subject to a BFP's

intervening rights) rather than *voidable* (in which case the Property was clearly subject to a BFP's intervening

rights), and when it adjudicated that, as a result, the BankPlus Deeds of Trust were likewise void. (*See e.g.*,

AP, pp. 32-40).[14] If this Court agrees with BankPlus on the void versus voidable issue, then it must reach

BankPlus' BFP argument -- a fact which Plaintiffs do not appear to contest.

 BankPlus is clearly *not* arguing that the BankPlus Deeds of Trust created a valid security interest even

if the Bankruptcy Court was correct in adjudicating that the Kinwood Warranty Deeds were void, such that

they did not pass any title to Northlake, rather than merely voidable. As such, Plaintiffs' assertion, on pp. 18,

26 and 31 of their brief, that certain BankPlus witnesses "understood that *if* Northlake didn't have title,

---

[12] This proposition clearly applies by analogy to limited liability companies.

[13] The Bankruptcy Court recognized that the Kinwood Conveyance was not positively forbidden when it noted that a Mississippi LLC "may carry on any lawful business, purpose, or activity unless the Certificate of Formation sets forth limitations thereon," which the Kinwood Certificate of Formation did not. (*See* Dkt. No. 94, pp. 10, 12). Rather, according to the Bankruptcy Court, the Kinwood Conveyance was forbidden, or unauthorized, due to Earwood's lack of express or apparent authority in connection therewith. (Dkt. No. 94, pp. 16-18).

[14] Contrary to Plaintiffs' disingenuous assertion that BankPlus has somehow "gloss[ed] over and avoid[ed] discussion" of the void versus voidable issue herein, BankPlus clearly and thoroughly addressed that issue on pp. 32-40 of the Appellant Brief and, in doing so, demonstrated that the Bankruptcy Court erred in this regard as a matter of law.

8

BankPlus' liens would be no good" is completely irrelevant and misleading. Indeed, BankPlus' witnesses' testimony was that the BankPlus Deeds of Trust would be void (rather than voidable and subject to an intervening BFP's rights) if, *and only if*, the truth of the hypothetical posed by Plaintiffs' counsel is *assumed* -- i.e., that the Kinwood Conveyance was void *ab initio* and thus passed no title to Northlake. (*See* AE Brief, p. 26 n. 15; Trial Tr. Vol. 3, pp. 73:25, 74:1-12). Further, Plaintiffs' discussion of cases and other authorities which stand for the general proposition -- that conveyances of real property which are void *ab initio* rather than voidable are not subject to a subsequent BFP's intervening rights -- are simply irrelevant and miss the point of the instant appeal. (*See* AE Brief, pp. 27-28).

d.   **Plaintiffs' assertion that the Kinwood Warranty Deeds were necessarily void based on general principles of personal property law is without merit.**

Plaintiffs assert that "a thief cannot pass title" and, in support, discuss some cases which stand for the general proposition that someone who steals *personal* property acquires void (rather than voidable) title and therefore cannot confer title to a BFP, and also cite to an Article 9 provision dealing with the enforceability of security interests in *personal* property. (AE Brief, p. 27). Those authorities are, however, completely distinguishable and irrelevant to this appeal. Again, there are numerous cases which support the conclusion that the Kinwood Conveyance, a conveyance of *real* property, was not void but voidable, and, as such, subject to BankPlus' intervening rights as a bonafide purchaser. (*See* AP Brief, pp. 32-38).

Further, if the Court decides that authorities dealing with personal property are persuasive, BankPlus would draw the Court's attention to the *Wells Fargo v. Billingsly* case, which was issued by this Court and is discussed in detail on p. 38 of the Appellant Brief. What occurred in the instant case is certainly more analogous to the *Wells Fargo* case than to any of the personal property authorities cited by Plaintiffs, particularly because the Bankruptcy Court expressly found that "Earwood converted [which is essentially the same thing as embezzled] the Property . . . by executing and filing the Kinwood Warranty Deed and pledging the Property to BankPlus." (*See* Dkt. No. 94, p. 15). As such, Kinwood would have been entitled to get that Property back *but for* BankPlus' status as an intervening BFP.

     e.      **The more persuasive, analogous, authorities demonstrate that the Kinwood Warranty Deeds were voidable rather than void, and, as such, that the BankPlus Deeds of Trust created a valid security interest in the Property due to BankPlus' BFP status.**

BankPlus has previously established that the Bankruptcy Court's reliance on *Scarp* was misplaced, that the Plaintiffs' cases are distinguishable in that they all either stand for the proposition that legally *forged* conveyances of real property are void and/or do not involve the intervening rights of a BFP and/or are contrary to Mississippi law, and that the more persuasive and analogous cases support the conclusion that the Kinwood Conveyance was not void but voidable, and, as such, subject to BankPlus' intervening BFP rights. (AP Brief, pp. 32-38). BankPlus will not rehash here what it has already established, but will address the limited number of new cases and arguments raised by Plaintiffs in their brief.

First, Plaintiffs assert that the case of *Belk Const. Co. v. S.F. Kennedy New Prods., Inc.*, 4 B.R. 132 (Bankr. N.D. Miss. 1980) supports their argument that the Kinwood Conveyance was correctly held to be void *ab initio* rather than voidable. (AE Brief, pp. 28-29). That is simply not the case. As Plaintiffs themselves admit, the *Belk* case is completely distinguishable in that its holding was based entirely on that Court's interpretation of corporate statutory provisions which dealt with mortgages of all or substantially all of the assets of a corporation, which have no analog in the Act, and which were *repealed* in 1987. *Id.* at 137-38. Further, Belk did not involve an intervening BFP and, as such, the Court did not address such rights. If it had, it may very well have distinguished between void versus voidable transfers of property. Also, the holding in Belk was partially predicated on the fact that the debtor involved therein was not in the business of buying or selling real property. *Id.* at 139. If it had been, as Kinwood was (*see* Dkt. No. 94, p. 12), then the Court may have also taken into account the *ultra vires* cases referenced above and discussed in the Appellant Brief, and, as a result, held the subject conveyance to be voidable rather than void.

Second, Plaintiffs assert that BankPlus' distinguishment of the *Cumberland* case in its Appellant Brief was "specious" and "facetious". (AE Brief, pp. 29-30). However, BankPlus established that *Cumberland* is distinguishable and *contrary to Mississippi law*, and, as such, does not support the Bankruptcy Court's finding that the Kinwood Conveyance was void rather than voidable. (AP, pp. 33-34, 36). To summarize, in *Cumberland*, an Alabama court held certain real property conveyances to be void rather than voidable under

10

Alabama law (and thus not subject to a bonafide purchasers' intervening rights) because the signatures of the grantors involved in that case "were placed upon the deeds either by forgery or by the grantors having been deceived into signing the instruments in ignorance of their true character." *Id.* at 713, 714. Further, the Court stated that "[e]ven if the signatures are not forged . . . a deed is nonetheless absolutely void where the grantor's signature is obtained by fraud *going to the nature of the instrument he was requested to sign.*" *Id.* at 713 (emphasis added). As such, *Cumberland* merely stands for the proposition that real property conveyances can be absolutely void in Alabama under circumstances which did not occur in the instant case before this Court. Further, Cumberland is contrary to Mississippi law in light of the Fifth Circuit's holding, in *Guice v. Burrage*, that when a genuine execution of a mineral deed is obtained by a lessee based on his false representation that the instrument being executed is a *copy* of a mineral lease, the deed is, under Mississippi law, a *voidable*, fraudulent conveyance subject to a BFP's intervening rights, and *not* a *void forged* conveyance.

Plaintiffs argue, without citing any supporting authority, that *Cumberland* is instructive because Earwood's signature on the Kinwood Warranty Deeds somehow constituted the "forged signature of Kinwood", regardless of the uncontested facts that Earwood himself signed those deeds, that Earwood was not deceived into signing those deeds in ignorance of their true character, and that Earwood's signature on behalf of Kinwood on those deeds was not obtained by fraud going to the nature of the instrument signed. Plaintiffs' forgery argument is fundamentally flawed. Indeed, based on the foregoing uncontested facts, it cannot be argued that the signature on the Kinwood Warranty Deeds was forged given that the person who purported to sign those deeds (i.e., Earwood, a member of Kinwood) did in fact sign them. Significantly, *Plaintiffs' own expert* agreed with this conclusion at trial. (Trial Tr. Vol. 2b, pp. 43:14-25, 44:1-9)[15].

Third, Plaintiffs assert that the cases cited by BankPlus for the proposition that the Kinwood Conveyance was voidable and not void are distinguishable because BankPlus "cites primarily cases of fraud or misrepresentation as inducing conveyances of real . . . property" while this case is about whether Earwood had the authority to convey the Property on behalf of Kinwood. (AE Brief, p. 30). However, in its Appellant Brief

---

[15]   Q:   Earlier you testified that when Mr. Earwood signed the deed from Kinwood to Northlake it was as
             if it were a forgery. . . .
       A:   That's my opinion. He had no authority to sign the deed.
       Q:   But it's not a forgery, is it?
       A:   No, I didn't say it was a forgery. I said it essentially has the same legal effect as a forgery, pass no title.

and herein, BankPlus has established that the one case cited by the Court (i.e., *Scarp*), and that all of the cases cited by Plaintiffs, for the proposition that the Kinwood Conveyance was void are distinguishable and that the more persuasive, analogous cases support the conclusion that the Kinwood Conveyance was merely voidable and subject to BankPlus' intervening BFP rights.  Moreover, many of the cases cited by BankPlus do in fact support the conclusion that real property conveyances made without authority are voidable and not void.  (*See* AP Brief, pp. 35-37).[16]  In addition, this case is not simply about whether Earwood had the authority to convey the Property on behalf of Kinwood.  It is also about the Bankruptcy Court's finding that, unbeknownst to BankPlus, Earwood engaged in a fraudulent scheme to convert the Property and that the Kinwood Warranty Deeds and BankPlus Deeds of Trust were a part of that fraudulent scheme.  (*See* Dkt. No. 94, pp. 14-15,18-19).[17]  In light of this fact, the cases cited by BankPlus which deal with whether real property conveyances accompanied by fraudulent conduct are void or voidable seem particularly applicable and instructive.

Lastly, Plaintiffs assert that BankPlus' argument that the Kinwood Warranty Deeds are not forgeries or the equivalent of forgeries is positively wrong because it "ignores the principles that a conveyance not signed by an authorized party . . . violates the Statute of Frauds" and is, as such, a "legal forgery".  Plaintiffs cite only to  Miss. Code Ann. § 15-3-1 (1972) in support of this assertion.  However, that provision is completely inapplicable to the instant case because it simply provides that a party cannot bring an action against another party upon a contract for the sale of lands unless such contract is in writing and signed by the person being sued or by someone with authority to sign for the person being sued.  That provision *certainly* does not provide that a conveyance not signed by an authorized party constitutes a "legal forgery", and it is telling that Plaintiffs do not cite a single case that suggests otherwise.

> **f.      Sound public policy favors a finding by this Court that the BankPlus Deeds of Trust are valid and enforceable.**

It would comport with sound public policy for this Court to find that BankPlus holds a valid security interest in the Property as a result of its BFP status.  (AP Brief, pp. 38-40).  Plaintiffs assert, however, that

---

[16] Citing *Sanders v. Sorrell*, 3 So. 661 (Miss. 1888); *Lee v. Boyd*, 16 So.2d 30 (Miss. 1943) *Blue River Co. v. Summit County Dev. Corp.*, 207 F. Supp. 283, 290 (D. Colo. 1062); *Harrison v. City of New Bern*, 137 S.E. 582, 584 (N.C. 1927); *Hall v. Farmers' & Merchants' Bank*, 46 S.W. 1000, 1002 (Mo. 1898); *Boston & M. Consol. C. & S. Mining co. v. Montana Ore Purchasing Co.*, 89 F. 529, 530 (D. Mont. 1898).
[17] In other words, Kinwood, through its member Earwood, was a party to the fraud perpetrated on BankPlus.

BankPlus' public policy argument advocates a world where A could convey B's real property to himself, pledge that property to a bank in exchange for a loan, and then, if A defaults, the bank could foreclose "with impunity". (AE Brief, p. 39). However, this assertion is not tenable because it necessarily involves a forged initial conveyance which, in all likelihood, would be void rather than voidable.

**III.    Plaintiffs' assertion that BankPlus is not and could not be a BFP is without merit.**

BankPlus has previously established that it is a BFP of the Property. (AP Brief, pp. 21-32). BankPlus has also effectively rebutted Plaintiffs' invalid assertion that BankPlus' BFP status is irrelevant. As such, BankPlus will now only address the previously unaddressed arguments that Plaintiffs have advanced in support of their assertion that BankPlus is not a BFP (at least those arguments that Plaintiffs attempt to support with legitimate legal authorities or citations to the record).

Plaintiffs assert that BankPlus is not a BFP because it "allowed its own borrower, Earwood, to search the public records and provide the title certificate on which the Bank relief." (AE Brief, p. 32). This is simply not true. First, Earwood was not BankPlus' borrower -- Northlake was. Second, BankPlus did not in any way "allow" Earwood to search the public records and provide the multiple title certificates upon which BankPlus relied. Indeed, while the Bankruptcy Court found that Earwood did the title search and some related work which led to the issuance of the First Title Certificate, none of that was known to BankPlus and no finding to the contrary was made. (*See* AP Brief, p. 14). Further, BankPlus relied on *multiple* Title Certificates which all certified that title to the Property was vested in Northlake during all times relevant to the loans BankPlus made to Northlake -- several issued by the Earwood & Childers Firm (executed by Childers, *not* Earwood) *and* several issued by Stewart Title Company. (AP Brief, pp. 14-18).

Plaintiffs next assert that BankPlus is not a BFP because it allowed the firm of Earwood & Childers to certify title. This assertion ignores the fact that BankPlus also obtained multiple Title Certificates from Stewart Title. In addition, the fact that a member of Earwood's firm issued some of the Title Certificates on behalf of the firm is consistent with established banking practices, a fact which *both* of BankPlus' experts (i.e., Underwood and Fillingim) confirmed despite Plaintiffs' misleading assertions to the contrary. (*See* AP Brief, p. 22 n. 23; *see also* Trial Tr. Vol. 3, pp. 13:19-25, 14:1-6, 16:1-7, 20:3-23).

Plaintiffs next erroneously assert that "BankPlus argues . . . that since its borrower did not tell it what was on the public record so it could have inquired into the Kinwood issues, it is not bound by the public record." (AE Brief, p. 33). This assertion is completely untrue and even a cursory review of the Appellant Brief will establish that BankPlus has not argued anything of the sort. Indeed, BankPlus affirmatively established in its brief the precise reasons why it is a BFP of the Property, including why it was without actual, constructive, or inquiry notice of the adverse rights of Kinwood in the Property (despite the fact that Plaintiffs have the burden of establishing that BankPlus had such notice).

Notwithstanding the above, Plaintiffs *repeatedly* assert that BankPlus had constructive or inquiry notice or knowledge that Kinwood had an interest in the Property adverse to BankPlus.[18] (*See* AE Brief, pp. 34-35). The *sole* basis for Plaintiffs' assertion in this regard is their disingenuous contention that the existence of such notice was established by the trial testimony of BankPlus' loan officer (Simpson) and one of its expert witnesses (Fillingim). More specifically, Plaintiffs contend that Simpson "testified that had he known what was on the public record that he would have inquired into the authority of Kinwood to convey the property" and further contend that Fillingim echoed that testimony. Plaintiffs' characterization of their testimony is simply devoid of truth. In reality, Simpson testified that he would have inquired into Kinwood if, *and only if*, the truth of the hypothetical posed by Plaintiffs' counsel was *assumed* -- i.e., that Simpson *had been given a title certificate* that said Kinwood owns the Property as of August 1, 2000. (*See* Trial Tr. Vol. 2b, p. 141:7-19).[19] Of course, that did not happen in this case, and Plaintiffs do not contest that Simpson lacked any such knowledge. Rather, the First Title Certificate, dated August 10, 2000, certified that *Northlake* owned the Property as of August 1, 2000.[20]

---

[18] Plaintiffs do not appear to legitimately contest the fact that BankPlus was without actual notice. While they briefly reference *Mills v. Damson*, they do not even attempt to meet their burden of establishing that the Earwood & Childers Firm was BankPlus' agent in connection with the title examinations and Title Certificates rather than merely an independent contractor, and do not even attempt to rebut the fact that Earwood's knowledge cannot be imputed to BankPlus due to the clearly established "adverse interest exception".

[19] Fillingim's actual testimony was to the same effect. (Trial Tr. Vol. 3, p. 32:3-7).

[20] Childers testified that the August 1, 2000 date was a typographical error and that that date should have been August 7, 2000 -- i.e., the date the initial Kinwood Warranty Deed was recorded. (Trial Tr. Vol. 2a, pp. 15-16). That said, the initial Kinwood Warranty Deed was in fact executed on July 12, 2000, twenty (20) days before August 1st. Further, that deed was recorded *before* the date the First Title Certificate was issued to BankPlus and *before* the date of BankPlus' initial loan to Northlake. In addition, the purpose of the First Title Certificate was obviously to confirm that Northlake held title to the Property which was going to secure the loan. As such, to the extent that Plaintiffs are suggesting that Simpsons' testimony was that he would have inquired into Kinwood had he known what was in the Land Records (which

14

Despite Plaintiffs' considerable efforts to mislead this Court by misconstruing the trial testimony, the fact remains that BankPlus was unquestionably without constructive notice or knowledge of the adverse interests of Kinwood in the Property because there was *nothing* in the Land Records or other public records which would provide such notice (even though there could have been had Kinwood decided to place its Operating Agreement of record).[21]   (AP Brief, pp. 29-30).   The fact also remains that BankPlus was without inquiry notice or knowledge for the reasons discussed on pp. 30-31 of the Appellant Brief.

Next, and apparently in support of an argument that BankPlus is not a BFP because it lacked good faith in connection with the Transactions, Plaintiffs quote the Bankruptcy Court's statement that "[h]ad an independent . . . title abstractor become involved at any point, Earwood's fraud most likely would have been discovered early." (AE Brief, pp. 33, 38).   This obviously ignores the fact that an independent abstractor did in fact become involved.   In fact, BankPlus obtained *four* (4) Title Certificates from Stewart Title, all of which confirmed the same thing that the Title Certificates received from the Earwood & Childers firm confirmed -- that title to the Property was vested in Northlake at all relevant times.   (AP Brief, pp. 18, 23).   It's also worth noting that Plaintiffs have not argued, and cannot argue, that these Title Certificates were inaccurate or erroneous on their face, or that an independent abstractor like Stewart Title would have questioned the validity of the Kinwood Conveyance based on what is in the Land Records.[22]

IV.   **Plaintiffs' assertion that this Court should not consider BankPlus' argument that the Bankruptcy Court erred when it failed to impose an equitable lien in favor of BankPlus is without merit.**

Plaintiffs assert that this Court should not consider BankPlus' alternative argument that the Bankruptcy Court should have imposed an equitable lien on the Property in favor of BankPlus for the Indebtedness owed to BankPlus by Northlake.   (AE Brief, pp. 2, 40-42).   The main basis for Plaintiffs' assertion is that this alternative argument was not raised in the Bankruptcy Case.   But, this Court clearly has

---

showed that Kinwood owned the Property as of August 1, 2000), that is completely disingenuous. Rather, Simpsons' testimony was that he would have inquired into Kinwood had the First Title Certificate certified Kinwood to be the owner of the Property as of the effective date of that certificate.

[21] As such, Plaintiffs' repeated assertions that BankPlus would, for example, "easily have discovered [from the Land Records] that there was no authority for Earwood to execute [the Kinwood Warranty Deeds]" are just plain wrong.

[22] Plaintiffs also make numerous vague references to BankPlus' alleged negligence in connection with the Transactions. (*See e.g.* AE Brief, pp. 39-40).   However, BankPlus has more than demonstrated its good faith on pp. 21-23 of the Appellant Brief.

the discretion to consider this argument because it involves a pure question of law and/or because ignoring it would result in a miscarriage of justice if the Court decides that the Bankruptcy Court did not err when it held the Kinwood Warranty Deeds to be void rather than voidable.  (AP Brief, pp. 42-43).

Plaintiffs, however, contend that this argument should not be considered on appeal because to do so would require additional fact development.  (AE Brief, p. 42).  That is simply not true, as the record establishes the amount of the Indebtedness owed by Northlake.  Plaintiffs also contend that it would be inequitable to consider this argument on appeal because the imposition of an equitable lien would "overturn what the law requires." (AE Brief, pp. 42-43).  It that were a proper justification, then Courts would never do equity, and, in any event, equitable liens are a well recognized " right . . . to have a demand satisfied from a . . . specific property." *Kane Enterprises v.* MacGregor, 322 F. 3d 371, 375 (5th Cir. 1993).

## V.     Plaintiffs' assertion that BankPlus is not entitled an equitable lien is without merit.

BankPlus is, in the alternative, entitled to an equitable lien.  (*See* AP Brief, pp. 40-43).  Plaintiffs, however, argue that BankPlus is not because it "made no real effort to protect itself" and was "the victim of its own haste and negligence." (AE Brief, p. 43).  On the contrary, BankPlus acted in the utmost good faith and its actions were reasonable and consistent with usual and customary banking standards and practices.  (AP Brief, pp. 21-23).  BankPlus certainly did not "allow" Earwood to search the public records and provide the Title Certificates on which BankPlus relied.  (*See supra*).  Further, BankPlus obtained multiple Title Certificates from both the Earwood & Childers Firm *and* from Stewart Title, belying Plaintiffs' assertion that "nobody outside the Bank and Earwood had any participation in the loan."[23]  Indeed, the Bankruptcy Court found Earwood to be the sole bad actor here, and made no findings to suggest that BankPlus acted in any way other than reasonably and in good bad faith.  (AP Brief, p. 23).

Plaintiffs also assert that Kiniyalocts was not in a better position than BankPlus to discover Earwood's fraud despite the fact that Mr. Kiniyalocts allowed Earwood to run Kinwood unsupervised, shirked his responsibility to review and monitor Kinwood pursuant to Miss. Code Ann. § 79-29-308, and, incredibly,

---

[23] Plaintiffs know this to be the case, and BankPlus is puzzled by Plaintiffs' continued assertions to the contrary.

16

failed to discover the Kinwood Conveyance for over six (6) years.[24] (*See* Dkt. No. 46, Underwood Expert Report, p. 11; *see also* Vol. 2a, pp. 91:22-25 and 92:1-5). In an attempt to support this assertion, Plaintiffs point to the Bankruptcy Court's findings that "*[f]rom the information that Earwood provided*, Kiniyalocts had no reason to know that Earwood was converting Kinwood assets" and that "Kiniyalocts would not have known that Earwood had attempted to transfer the Property to Northlake [based on the fact that Earwood had written to him on different sets of stationary]". Plaintiffs are missing the point. BankPlus is not arguing that Mr. Kiniyalocts had reason to know of Earwood's actions based on information provided by Earwood; rather, BankPlus is arguing that Mr. Kiniyalocts was in a better position to know but, instead, allowed Earwood to run Kinwood unsupervised by allowing him to prepare all the tax returns and financial statements, to negotiate sales contracts for the Property, and to have free reign of Kinwood's bank accounts and other assets.[25]

Finally, Plaintiffs assert that BankPlus is not entitled to an equitable lien because the record does not establish what Northlake spent the loan proceeds on. Plaintiffs are confusing the law of constructive trusts with the law of equitable liens. The record establishes the amount of the Indebtedness owed by Northlake, and that is the amount of the equitable lien to which BankPlus is entitled. (*See* AP Brief, p. 41).

## VI.    Plaintiffs' assertion that BankPlus' appeal is frivolous is without merit.

Plaintiffs repeatedly assert that BankPlus' appeal is without merit or reasonable basis and is, therefore, sanctionable as frivolous. (*See e.g.* AE Brief, pp. 1, 19). This assertion is utterly without merit, a fact which is abundantly clear from BankPlus' appeal briefing. And, in any event, this issue should not be considered by this Court absent a separately filed motion, or a notice from this Court, providing BankPlus a reasonable opportunity to respond. *See* Bankruptcy Rule 8020.

BankPlus will specifically address Plaintiffs' statement that they "sought such an adjudication in the Bankruptcy Court [which the Bankruptcy Judge] denied . . . on the ground that the central, *nee* [sic] only,

---

[24] Plaintiffs' assertion that Kiniyalocts "discovery" window was only thirteen (13) days is absurd given that BankPlus loaned Northlake additional funds over several years.

[25] Kiniyalocts conduct in this regard enabled Kinwood to perpetrate a fraud on Kinwood, Kiniyalocts, and eventually BankPlus. Had Kiniyalocts employed a prudent business system of checks and balances to protect Kinwood's business and its assets by hiring independent professionals such as a CPA, property manager or attorney to manage the Property, and/or prepare the tax returns, contracts and other legal agreements at any point for Kinwood, Earwood's fraud most likely would have been discovered earlier. Unfortunately, Kiniyalocts failed to do that. It is this failure to operate Kinwood in a normal business like manner that ultimately led to the fraud perpetrated by Earwood.

17

determination to be made at trial was whether or not Earwood had authority to convey the . . . Property to Northlake," as that statement is entirely inaccurate. (AE Brief, p. 19). Plaintiffs did request sanctions against BankPlus in their Motion to Alter or Amend (Dkt. No. 101), but the Bankruptcy Court firmly denied that request on procedural, evidentiary, and substantive grounds. (Dkt. No. 115, pp. 11-13).

In doing so, the Bankruptcy Court found that BankPlus' various defenses (expressly including BankPlus' BFP argument) were *not* raised "without substantial justification, without expectation of success, or to delay or harass." (*Id.*, pp. 12-13). Further, the Bankruptcy Court most certainly did *not* base its denial of Plaintiffs' sanctions request "on the ground that the . . . only . . . determination to be made at trial was whether or not Earwood had authority to convey the . . . Property to Northlake." (*Id.*). Rather, the fact that the Bankruptcy Court denied Plaintiffs' Motion for Summary Judgment prior to trial due to the existence of genuine issues of material fact[26] (the "central" one of which was later identified as the question of Earwood's actual authority) was but one of the bases for its denial of Plaintiffs' sanctions request.

## CONCLUSION

BankPlus adopts the conclusion set forth in its Appellant Brief . (AP Brief, p. 43).

**THIS** the 14th day of October, 2008.

Respectfully submitted,

**BANKPLUS**

By: /s/ William H. Leech
    William H. Leech (MBN 1175)
    Danny E. Ruhl (MBN 101576)
    Its Attorneys

OF COUNSEL:
**COPELAND, COOK, TAYLOR & BUSH, P.A.**
600 Concourse Building, Suite 100
1076 Highland Colony Parkway (Zip—39157)
P.O. Box 6020
Ridgeland, MS  39158
Telephone:  (601) 856-7200
Facsimile:  (601) 856-7626
bleech@cctb.com
druhl@cctb.com

---

[26] *See* Dkt. No. 87, which states that "[b]ased on the pleadings and exhibits, together with the supporting briefs, the [Plaintiffs'] Motion [for Summary Judgment] should be denied because there are genuine issues of material fact".

Edward E. Lawler, Jr., MBN 1095
R. Keith Foreman, MBN 5421
**McKAY SIMPSON LAWLER FRANKLIN & FOREMAN, PLLC**
368 Highland Colony Parkway (Zip – 39157)
P. O. Box 2488
Ridgeland, MS 39158
Telephone:     (601) 572-8778
Facsimile:     (601) 572-8440
elawler@mckaysimpson.com
kforeman@mckaysimpson.com

## CERTIFICATE OF SERVICE

      I hereby certify that I have this day served the above and foregoing on the following via the Court's

ECF Notification System:

| | |
|---|---|
| James R. Mozingo, Esq. | Christopher Steiskal, Esq. |
| Knight & Mozingo, PLLC | 100 West Capitol Street, Suite 706 |
| 601 Renaissance Way, Suite B | Jackson, MS 39269 |
| P.O. Box 4587 | Office of the U.S. Trustee |
| Jackson, MS 39296 | |
| Attorney for Appellees | |
| | |
| Derek A. Henderson, Esq. | Luke Dove, Esq. |
| 111 East Capitol Street, Suite 455 | 4266 I-55 N., Suite 108 |
| Jackson, MS 39201 | Jackson, MS 39211 |
| Chapter 7 Trustee for Northlake Development, LLC | Attorney for Northlake Development, LLC |

      **THIS** the 14th day of October, 2008.

        /s/ William H. Leech
        Of Counsel